[Civ. No. 5119. First Appellate District, Division One.—June 4, 1925.]

## LILLIAN FISK JAEGER, Respondent, v. SAMUEL ALLEN JAEGER, Appellant.

[1] DIVORCE—FINAL DECREE—SUBSEQUENT ILLNESS OF MINOR CHILD—PAYMENT OF EXPENSES BY FATHER—JURISDICTION.—Where after the entry of the final decree of divorce, in which the care and custody of the minor child is awarded to the wife and provision therein made for its support, maintenance and education, said minor child becomes ill and it becomes necessary to employ nurses and physicians and to furnish medicines, and the mother pays a part of such expenses, but is without funds to pay the balance, and the estate of the father is ample to pay therefor, the court

1. See 9 Cal. Jur. 810; 9 R. C. L. 484.

is authorized, under section 138 of the Civil Code, as amended in 1905, to make an order directing the father to pay the expenses incurred by reason of such illness of said child, notwithstanding the application therefor is not made until after the recovery of the child.

(1) 19 **C. J.**, p. 357, n. 44.

APPEAL from an order of the Superior Court of Sonoma County directing the father to pay the expenses connected with the illness of a minor child. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry T. Kyle for Appellant.

R. M. Barrett and Edgar D. Peixotto for Respondent.

CASHIN, J.—Respondent Lillian Fisk Jaeger was formerly the wife of Samuel Allen Jaeger, an incompetent person, who appears as appellant herein by James R. Edwards, the guardian of his estate. The only issue of the marriage was Pualeilani Jaeger, a minor, whose age at the date of the orders hereinafter mentioned was four years, and of whose person and estate respondent has since June 23, 1922, been the duly appointed, qualified and acting guardian. By a final decree of the superior court of Sonoma County, entered on July 27, 1922, the parties were divorced, the grounds therefor being the fault of appellant. The care and custody of said minor by said decree were awarded to respondent. By the decree appellant was ordered to pay to respondent the sum of $100 each month for her support, and for the maintenance, support and education of the minor the further sum of $30 each month. After the interlocutory decree and before the entry of the final decree, after proceedings regularly had, appellant was adjudged to be incompetent, and the said James R. Edwards was duly appointed and qualified as the guardian of his estate. Thereafter, during the month of February, 1923, the said minor became ill, due to an attack of tonsilitis, followed by pneumonia, the condition of illness and convalescence continuing until the month of August, 1923. Her condition made necessary an operation, the employment of physicians and nurses and the

purchase of medicines. On April 13, 1923, the superior court, on application of respondent, and the consent of appellant through his guardian, given in open court, made its order for the payment by appellant of the sum of $66 for the services of nurses for the minor theretofore rendered and made necessary by such illness. [1] The illness continuing, respondent, between the date of said order and the month of August, 1923, procured the services of physicians and nurses, one of said nurses having been employed prior to and paid pursuant to the order made in April, and the furnishing of medicines for the minor, but made no application to the court for orders directing appellant to furnish or pay for such services and medicines until October 29, 1923, after the recovery of the minor. On the date last mentioned respondent filed her petition for the order of the court directing appellant to pay the additional expenses incurred, amounting to the sum of $993.85, alleging that the estate of appellant was ample, that the guardian of his estate had on hand funds sufficient to pay, and, according to the testimony of respondent, that she was without estate, and her earnings, with the amount allowed by the final decree for her support, were not sufficient therefor and for the extraordinary demands due to such illness; that she had borrowed the sum of $518.85, which had by her been paid on account of the expenses incurred, and that of such expenses the sum of $475 remained unpaid, together with the sum so borrowed. The court, after due notice and hearing, made its order directing the guardian to pay to respondent from the estate of appellant in the due course of administration thereof the sum of $993.85, as and for the maintenance and support of the minor, in addition to the monthly payments theretofore ordered. From this order the appeal was taken.

It is not denied by appellant that the services or medicines were necessary, that the charges therefor were reasonable, that the estate of appellant is able to pay, or that had the application been made before the services and medicines were furnished, the court, the necessity appearing, would have had authority to make the order; but contends that the services and medicines having been procured in advance thereof it was without power to make the order appealed from.

We are satisfied that the petition was sufficient to support the order if the court had authority on the facts to grant the relief prayed.

The court acted pursuant to the provisions of section 138 of the Civil Code, as amended in 1905 (Stats. 1905, p. 43), which section, as originally enacted, was as follows: "In an action for divorce the court may before or after judgment give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." The section was amended in 1905 to read: "In actions for divorce the court may during the pendency of the action, or at the final hearing, or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."

Prior to the adoption of the codes the statute (Stats. 1851, sec. 7, p. 187) authorizing courts to make orders subsequent to judgment for the maintenance of the children of the marriage provided: "In any action for divorce, the court may, during the pendency of the action or at the final hearing, or afterwards, make such order for the support of the wife, and the maintenance and education of the children of the marriage, as may be just, and may at any time thereafter annul, vary or modify such order as the interest and welfare of the children may require."

In the case of *Wilson* v. *Wilson*, 45 Cal. 399, on appeal from an order of the district court, made pursuant to the statute of 1851, *supra*, requiring the divorced husband to pay the plaintiff (wife) certain sums for the future and past maintenance of the minor child of the marriage, there having been no provision made therefor in the decree, and the wife having incurred the expense necessary for such past support, the order was affirmed, the court holding that under the statute *supra*, where it is shown that the interest and welfare of the child required it and that such order is just, it was within the power of the court to provide for the payment by the husband of the past as well as the future maintenance of the child. Section 138 of the Civil Code, as originally enacted, empowered the court "to give such direction for the custody, care and education of the children as

may seem necessary or proper," either by the original decree or a modification thereof. In the case of *McKay* v. *McKay,* 125 Cal. 65 [57 Pac. 677], relied on by appellant, an appeal from an order of the superior court directing the payment by defendant (the divorced husband) of sums for the past and future support of the children of the marriage awarded by the decree to the plaintiff (wife), and in which decree no provision was made for the maintenance of the children, the court, in reversing the order for the past, and affirming the order for the future, support, referred to the case of *Wilson* v. *Wilson, supra,* and held that the Wilson case having been decided prior to the adoption of the codes and under a statute expressly authorizing the court to make an order subsequent to the judgment for the maintenance of the children of the marriage, could not be regarded as an authority under a different provision of the code; that the provisions of section 138 of the Civil Code in form then in force, in the use of the term "direction" instead of "payment," implied that the action of the court was to be limited to the "care, custody and education" which the children were to subsequently receive under its direction.

The facts of the McKay case, as shown by the opinion, were that the plaintiff after the decree married one Polastri, who took the children into his own family and supported them as members thereof; that plaintiff claimed no compensation for such support; that as to any compensation therefor such would be to recompense Polastri for moneys spent upon the children. The court held that under the provisions of section 209 of the Civil Code, while Polastri was not bound to maintain his wife's children by McKay, yet having received them into his family and supported them it was to be presumed that he did so as a parent, and that where such was the case they were not liable to him for their support, nor he to them for their services, and that he could have no claim on defendant McKay for such support. The court proceeds to discuss the general rule that where the children have already been sufficiently cared for by the voluntary act of the mother or of strangers the court is not empowered to compel the father to reimburse these persons for such expenses (citing *Loveren* v. *Loveren,* 100 Cal. 493 [35 Pac. 87], and section 208, Civ. Code).

After the decision in the McKay case section 138 of the Civil Code was, by the Statute of 1905, page 43, amended to read as above. In *Harlan* v. *Harlan*, 154 Cal. 341, the court, in considering the apparent conflict between the decision in the McKay case and that of *Shattuck* v. *Shattuck*, 135 Cal. 192 [67 Pac. 45], held that the word "care" as used in section 138 of the Civil Code as originally enacted, is a broader term than the word "maintenance," and that, combined with "custody and education," it included every element of provision for the physical, mental and moral welfare of the child; that an order for the benefit of the children is equally within the jurisdiction of the court under said section 138, whether it uses the term "maintenance and support" or the broader and more inclusive expression "custody, care and education," and further that "all that was held in the McKay case was that the court should not by an order in such a case compel the husband to reimburse the wife or a third party for past expenditures incurred for the benefit of the children." The court in the McKay case did not indicate its dissent from the decision in the Wilson case, *supra*, based upon the provisions of the statute then in force, but was of the opinion that under the language of section 138 of the Civil Code as originally enacted the court was without power to do more than to give such direction as might be proper for the future custody, care and education of the children of the marriage. The amendment includes not only the power to make such order for the "maintenance and education"—the language of the Statute of 1851 on which the decision in the Wilson case, *supra*, was based—but also for the "custody, care, education and support" of such children, with power under both statutes to modify the order in proper cases. The Wilson and Mc-Kay cases both in law and fact were clearly to be distinguished, as is in our opinion the case at bar to be distinguished from the latter. In the instant case the court modified the original decree providing for the "maintenance, support and education" of the child by providing by its order of April 13, 1923, for additional payments to meet the expense, as may be inferred from the testimony of the mother, of what might reasonably have been believed to be an illness of short duration due to tonsilitis. Pneumonia following, immediate recourse to the services of physicians, the

incurring of expense for medicines, and the further services of the nurses theretofore employed and whose employment was impliedly authorized by the order of April, 1923, became necessary. Had respondent been able to adduce at the hearing in April, 1923, evidence reasonably supporting the conclusion that the existing illness of the child would develop into conditions so serious and prolonged, the court would have had power to order the payment of the necessary expenses from time to time as needed; but from the nature of such cases evidence of such necessity would rarely appear to the ordinary observer, and the opinions of skilled medical practitioners as to the expense of treating and the duration of a disease would be largely matters of conjecture. Such circumstances, the emergency shown and her dependent condition preclude the inference that her act in procuring relief for the child was voluntary in the sense that it was deliberate, or that no reliance was placed by her on orders previously made and to be made in the future by the court.

The case of *Gay* v. *Gay,* 146 Cal. 237 [79 Pac. 885] was an appeal from an order made after judgment of divorce rendered in favor of the plaintiff wife. The order required the husband to pay certain sums for her maintenance pending the appeal from the judgment, and in part provided for the payment of a sum covering a period preceding the motion and order. It was urged that the superior court was without power to order what was in effect a reimbursement of the cost of the wife's past support. The court, in distinguishing the decision in *Loveren v. Loveren, supra,* wherein an order for the reimbursement of a wife for expenses paid out of her separate estate or for moneys obtained upon her own credit was reversed, said: "In the case cited the rule that payments for past expenses shall not be allowed is not absolute but is subject to the qualification that such an order may be made whenever it appears that such payment is necessary to enable the wife to further prosecute or defend her case. And the same qualification of the rule should apply to applications by the wife for support. If it should appear to the court that it was necessary, in order to insure the support of the wife upon the amount to be paid to her periodically in the future, that existing wants or expenses incurred by her should be provided for, the court within the qualification announced would have the right to do so."

The court further held with reference to the order before it on appeal that the superior court, in making such order, properly took into consideration that in the interim between the entry of the judgment and the making of the order the wife was in indigent circumstances; that necessarily, being without means, she must have been restricted in supplying herself with many things suitable to her condition in life, or that, if these things were supplied, they must have been obtained upon credit asked and extended on the faith of a subsequent allowance to be made by the court; that under this state of circumstances it would be only proper for the court to make an immediate allowance in gross adequate to meet present actual wants arising therefrom or to discharge her indebtedness and restore her credit, or for both purposes; that the court by doing this in the first instance realized that it would leave her free from embarrassment through existing wants or present indebtedness, obviate the necessity of devoting any part of the future allowance to the payment of such indebtedness, and so enable her to live in the future upon the allowance provided for that purpose.

The reasoning of the court in *Gay* v. *Gay, supra,* in construing the language of section 137 of the Civil Code, and applying the section so construed to the facts before it, is equally pertinent to the present case. Neither section 137 nor section 138 of said code expressly provides for allowances for past support either of the wife or children; but considering the purpose of both, and that the first has been given such construction in support of an order based on facts analogous to those in the instant case—wherein it is apparent from the evidence that the allowance originally made for the support of the wife and child was insufficient to meet the necessities due to the illness of the child, that both were without other means sufficient therefor; that if the necessity was to be met the credit of the wife must be pledged, based upon the faith of a subsequent allowance by the court, and that to place the burden upon them or either would in effect deprive them of the possibility of living upon the allowance provided for the future—we are led to the conclusion that the language of section 138, Civil Code, as amended, makes it equally clear that the section permits an order under similar conditions to accomplish like results.

The amendment adopted in 1905 to section 138 of the Civil Code was a substantial re-enactment of the Statute of 1851, *supra,* which statute had been judicially interpreted by the court in *Wilson* v. *Wilson, supra.* No intention to the contrary being shown, and the Wilson case, in respect of the court's interpretation of the law then in force, not having been overruled, it may fairly be inferred that the legislature intended that the amendment should bear the same interpretation which had been given to the original act. (Black's Law of Judicial Precedents, p. 235; Black's Interpretation of Law, p. 607; Lewis' Sutherland Statutory Construction, 2d ed., sec. 399.) It is our opinion that in view of the purpose to protect the interests of the children and to enforce the obligations of the parents (*Harlan* v. *Harlan, supra*), a reasonably liberal construction of the language of the section as amended leads fairly to the conclusion that the order appealed from in this case was authorized thereby.

The order is, therefore, affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 3, 1925.