[L. A. No. 29143.   In Bank.   Feb. 28, 1968.]

VIOLET CAROL DAVIS, Plaintiff and Appellant, v. JOE H. DAVIS, Defendant and Respondent.

Vizzard, Baker, Sullivan & McFarland and Jere N. Sullivan for Plaintiff and Appellant.

Chain & Younger and Milton M. Younger for Defendant and Respondent.

BURKE, J.—The issue here presented is this: After the remarriage *to each other* of divorced parents may either enforce against the other child support orders made in the prior divorce proceeding? ▪ We conclude that the trial court correctly ruled that the remarriage terminated the support provisions with respect to payments thereafter accruing, and that its order should be affirmed.

In 1958 plaintiff mother secured a divorce in this state from defendant father, and was awarded sole custody of their two minor children. No order was then made for support of the children as defendant had been served outside California by publication. Thereafter, in April 1959, counsel for the respective parties entered into a written stipulation, in the divorce

proceeding, that defendant would pay plaintiff the sum of $100 per month per child until further court order, and that "the . . . Court may enter its order in respect to all matters contained in this stipulation." Accordingly, a child support order was made in the previously instituted divorce action.

In February 1960 plaintiff and defendant remarried each other. Several months later they again separated, and plaintiff thereafter instituted a second divorce action in California. As defendant was then employed in the oil fields in Iran, he was again served by publication and again the divorce decree did not provide support payments for the children.

Upon defendant's return to California he and plaintiff again stipulated through their respective counsel that a court order could be made for child support payments. A second order was entered in November 1964. Plaintiff does not contend that defendant has not complied with this order, but she now seeks to collect support payments for some 36 months between the separation that followed the remarriage, and the second support order. Accordingly, she moved for issuance of a writ of execution based on the *first* support order, entered in the first divorce action.

When the motion came on for hearing the trial court sustained an objection to the introduction of any evidence, on the ground that remarriage of the parties terminated the prior order for child support, and denied the motion. This appeal by plaintiff followed.

Plaintiff, in urging her theory that the remarriage of the parties did not terminate the first child support order, cites the general principles that parents are under a continuing legal duty to support their minor children independently of the marriage status (Civ. Code, §§ 138, 139; see *Rosher* v. *Superior Court* (1937) 9 Cal.2d 556, 559-560 [71 P.2d 918]; *Dimon* v. *Dimon* (1953) 40 Cal.2d 516, 523-524 [254 P.2d 528] [overruled on another ground in *Hudson* v. *Hudson* (1959) 52 Cal.2d 735, 744-745 [344 P.2d 295]]; *Bernard* v. *Bernard* (1947) 79 Cal.App.2d 353, 358 [179 P.2d 625]), and that child support agreements between parents are subject to approval and control by the courts. (See *Plumer* v. *Superior Court* (1958) 50 Cal.2d 631, 637 [328 P.2d 193]; *Puckett* v. *Puckett* (1943) 21 Cal.2d 833, 839 [136 P.2d 1]; *Evans* v. *Evans* (1908) 154 Cal. 644, 645-646 [98 P. 1044]; *McReynolds* v. *McReynolds* (1963) 218 Cal.App.2d 683, 685-686 [32 Cal. Rptr. 462].)

With these principles defendant has no quarrel, but as he

states, there is no issue here as to his basic duty to support his minor children. Rather, the more precise question is the effect of the remarriage upon the child support order made in the earlier divorce proceeding.

While it appears that no California case has considered this question or one closely analogous to it, the rule as developed in other jurisdictions is that if the parties again intermarry child custody and support orders as between themselves are thereupon terminated, as well as the jurisdiction of the court to enforce such orders, and that this is true whether or not the parents subsequently divorce again. (See *Lockard* v. *Lockard* (1951) 63 Ohio L.Abs. 549, 49 Ohio Ops. 163 [102 N.E.2d 747, 748]; *McDaniel* v. *Thompson* (Tex.Civ.App., 1946) 195 S.W.2d 202, 203-204; *Jenkins* v. *Followell* (Okla., 1953) 262 P.2d 880, 882; *Dunlap* v. *Dunlap* (1923) 88 Okla. 200 [212 P. 608, 609]; *Ex parte Phillips* (1957) 266 Ala. 198 [95 So.2d 77]; *Eppes* v. *Covey* (Fla.App., 1962) 141 So.2d 747, 748; *Rasch* v. *Rasch* (1964) 250 Miss. 885 [168 So.2d 738, 743]; *Lowe* v. *Lowe* (1909) 53 Wash. 50 [101 P. 704, 705]; *Oliphant* v. *Oliphant* (1928) 177 Ark. 613 [7 S.W.2d 783, 786-787]; *Cain* v. *Garner* (1916) 169 Ky. 633 [185 S.W. 122, Ann.Cas. 1918B 824, L.R.A. 1916E 682]; 27B C.J.S., Divorce, § 323, subd. h, p. 730; 24 Am.Jur.2d, Divorce and Separation, § 805, p. 915.)[1] Although certain of the cited cases speak only of custody, rather than of ''custody and support,'' a custody award to the mother ordinarily carries with it a support order against the father. In other cases the court has expressly referred to the support order as well. (See *Lockard, McDaniel, Dunlap, Rasch, Lowe,* all *supra.*) Thus, in *Lockard, supra,* it was noted (pp. 747-748 of 102 N.E.2d) that ''Where a decree of divorce makes provision for the custody, care, control, and support of minor children of divorced parents, . . . the jurisdiction of the court over custody continues. . . .

''But if the parties remarry they no longer have separate rights of custody . . . . Instead there is a resumption of the same joint right to custody which antedated the separation

[1] In *Miller* v. *Powell* (Tex.Civ.App., 1948) 212 S.W.2d 876, cited by plaintiff, the first divorce decree between the parents placed custody of the child with a *third* person, with both parents ordered to contribute to support. Accordingly, the holding that the *third* person's rights could not be affected by a second intermarriage of the parents or by a custody decree in a later second divorce action to which the third person was not a party, is not persuasive here. It is noteworthy, however, that the court referred to the general rule that remarriage between the parties annuls the divorce and restores them to their rights over their children as if never divorced. (P. 879 of 212 S.W.2d.)

and the **divorce** . . . [and] the basis for the court's further jurisdiction ceases.

"It is generally the law that remarriage of the parents terminates a divorce court's jurisdiction over the parties and their minor children. [Citations, including Nelson, Divorce and Annulment (2d ed.) 15.40.]."

The cited decisions are consistent with the objective of re-establishment of the family for the benefit of both the children and the parties.

The order appealed from is affirmed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., and Sullivan, J., concurred.

TOBRINER, J.—I concur.

I agree with the majority's holding on the narrow issue that the remarriage of the parents terminates a prior support order which would furnish the basis for obligating the non-custodial parent to pay the custodial parent for such support. I state my views separately, however, in order to emphasize the very narrow ground on which I would affirm the judgment below.

The plaintiff, in her declaration in support of her motion for issuance of a writ of execution, alleged that she was "requesting an order for due and owing child support payments only for the period after the separation from her when defendant ceased and terminated any and all support payments for the support and maintenance of the minor children of the parties." Plaintiff thus in effect sought "reimbursement" for money spent for the support of her children; she alleged the defendant's liability for such amount. At trial, the parties' attorneys stipulated that the case presented only the issue whether the plaintiff could recover on the basis of the support order obtained prior to their remarriage.

If the plaintiff had not relied solely on the first support order in seeking reimbursement, I would reverse the trial court and require a hearing on two issues: First, what amounts, if any, the defendant should have contributed to the support of his minor children during that period; Second, whether the plaintiff, after having discovered the defendant's presence in California in October 1964, waived her claim by waiting until February 1966 to seek reimbursement. I therefore disagree with the majority opinion insofar as it implicitly follows the rule that the custodial parent cannot

obtain reimbursement from the noncustodial or deserting parent for that period during which the custodial parent could not obtain personal jurisdiction over the noncustodial or deserting parent to enforce such obligation to support. I disagree, too, with the majority's reliance upon *Dimon* v. *Dimon* (1953) 40 Cal.2d 516 [254 P.2d 528], a case in which this court first enunciated the rule of non-reimbursement.

The father of minor children is both criminally and civilly liable for their support. Penal Code, section 270 imposes criminal responsibility on the father for support of his minor children (both legitimate and illegitimate) regardless of whether "the mother of such child is legally entitled to the custody of such child," and regardless of whether "the mother of such child, or any other person, or organization, voluntarily or involuntarily furnishes such [support]." Civil Code, section 137.1, enacted after the commencement of the action in *Dimon*, provides for the civil liability of a parent who wilfully fails to comply with his or her "duty to provide for the support" of a minor child. And although Civil Code section 196 provides that "the parent entitled to the custody of a child must give him support and education suitable to his circumstances," this state has long held that a divorced mother having sole custody of a minor child may bring an independent action against the father of the child to secure a child support order against the noncustodial father. (*Dixon* v. *Dixon* (1932) 216 Cal. 440 [14 P.2d 497].)

Since the father of a minor child owes a continuing obligation to support that child regardless of his marital relationship with the child's mother and regardless of whether or not he is entitled to the custody of the child, the custodian of the child should be entitled to recover those amounts expended for the child's support which the father, despite his liability, has failed to furnish. Section 137.1 of the Civil Code provides for such civil liability. In cases such as the instant one, therefore, in which the mother cannot obtain personal jurisdiction over the father during the period in which he fails to meet his obligations, she should, upon subsequently obtaining personal or quasi-in-rem jurisdiction over him, be entitled to seek reimbursement for such expenditures. The non-reimbursement rule of *Dimon* should therefore be overruled.

The court in *Dimon* construed section 137.1 of the Civil Code merely as "a legislative enactment of the case law as it existed at the time this action was commenced." (40 Cal.2d at p. 524.) The court then stated that "while the plaintiff in

this case may maintain an action for the support of the minor children of the marriage [terminated by an ex parte divorce in Connecticut], no case has been referred to where an award for other than future support has been made." (*Id.* at p. 524.) The court based its conclusion that the custodial parent may not obtain reimbursement for amounts previously spent to support the minor child of the defendant on the rationale of *McKay* v. *McKay* (1899) 125 Cal. 65, 71 [57 P. 677] : "The jurisdiction which the court retains in the original [divorce] case, either by express reservation in its decree, or which it has by authority of statute [then Civ. Code, § 138], to modify its judgment with reference to the custody and education of the children, or to make a new order in reference thereto, is not for the purpose of reimbursing for any expenditures she may have voluntarily made in that behalf, but to provide for such expenses as may be subsequently incurred . . . ."

The majority in *Dimon* erred in relying upon *McKay* for two basic reasons. The first relates to the different statutes applicable in the two cases, and the second relates to the inapplicability of the rationale of "voluntary" payment by the custodial parent of the noncustodial or deserting parent's obligation in a case in which the former could not obtain personal jurisdiction over the latter during the period for which the former seeks reimbursement.

First, the rule of non-reimbursement as enunciated in *McKay* was based on Civil Code section 138. At that time, section 138 provided that "In an action for divorce the court may before or after judgment give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." (125 Cal. at p. 68.) The court in *McKay* held that "the provisions of section 138 are in their nature prospective, and the use of the term 'direction' instead of 'payment' implies that the action of the court is to be limited to the 'care, custody, and education' which the children are subsequently to receive under its directions." (*Id.* at p. 70.)

At the time of the *Dimon* decision, section 137 of the Civil Code provided in part that when "a father wilfully fails to provide for his children, the mother of the children may, without applying for a divorce or maintenance for herself, maintain in the superior court an action against him solely for the support and maintenance of the children." The Legislature enacted this section in 1941 (Stats. 1941, ch. 1038), and

later amended it in 1951, adding present section 137.1. (Stats. 1951, ch. 1700, §§ 1, 2.) The controlling statute in *Dimon* was not, therefore, section 138, which provides for child support in divorce proceedings brought in California courts, but section 137, which provides for actions for child support independent of divorce or separate maintenance actions. (See concurring and dissenting opinion of Traynor, J., in *Dimon* v. *Dimon, supra,* 40 Cal.2d at p. 529.)

As Justice (now Chief Justice) Traynor explained in *Dimon* (concurring and dissenting opinion, *id.* at pp. 529-531), ''The first case to set forth the problem of reimbursement for past expenditures is *Wilson* v. *Wilson* (1873) 45 Cal. 399. The divorce decree had not provided for the support of the child. Two years after the decree the former wife sought an order for reimbursement of expenditures already incurred. This court affirmed an order of the trial court in favor of the wife, relying on the applicable statute which provided that the court might 'during the pendency of the action, or at the final hearing, or afterwards, make such order for the support of the wife, and maintenance and education of the children of the marriage as may be just.' (Stats. 1851, p. 187; Divorce Act., § 7.) The court pointed out that it might be 'for the interest and welfare of the child, that his past as well as future support should be paid for by the defendant.' (45 Cal. at p. 403.) In 1872, the statute was superseded by section 138 of the Civil Code, . . . The *Wilson* case was not overruled [in *McKay*], but distinguished on the ground that it was decided 'prior to the adoption of the codes, and under a statute which expressly authorized the court to make an order subsequent to the judgment for the maintenance of the children of the marriage.' (125 Cal. at p. 69.) In 1905 section 138 was amended to provide that the trial court might 'during the pendency of the action, or at the final hearing, or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper.' In *Jaeger* v. *Jaeger* (1925) 73 Cal.App. 128 [238 P. 139], it was determined that the amendment was substantially the same as the 1851 statute that 'had been judicially interpreted by the court in *Wilson* v. *Wilson, supra.* . . .

''The present action is based upon section 137, which provided at the time the complaint herein was filed that the wife may file an action 'solely for the support and maintenance of

the children.' This language, the basis of the *Wilson* and *Jaeger* decisions, omitted the wording relied on in the *McKay* case. The conclusion is inescapable that an action for reimbursement for past expenditures for support and maintenance of children may be maintained under section 137.''

Section 137.1, which replaced the above provision of section 137 in 1951, similarly omits the wording as to ''direction'' relied on in *McKay*. The same conclusion which Traynor, C. J., found ''inescapable'' as to the controlling statute in *Dimon* equally applies to its successor, section 137.1 (See *Kresteller* v. *Superior Court* (1967) 248 Cal.App.2d 545, 548 [56 Cal.Rptr. 771].)

Second, *Dimon* adopted the *McKay* rationale that the mother of a minor child cannot obtain reimbursement from the father for the amounts which he was legally obligated to pay for the child's support because the mother had already personally and voluntarily expended those amounts. This reasoning cannot sensibly apply to a case, like the present one, in which the mother cannot obtain personal jurisdiction over the father to enforce his obligation. The fact that the mother actually provides for her child's support, as indeed she is practicably, legally, and morally compelled to do, should not relieve the father from his primary legal obligation. His evasion of legal action for the enforcement of his duty should grant him no immunity. The wilfully defaulting father is still criminally liable under Penal Code section 270. ''It would indeed be the height of inconsistency to hold that a father has the duty to support his minor child under the penalty of criminal responsibility but that he does not owe that duty to the child because he has no civil liability for its support. It appears clear to us moreover, that such civil liability is implicit in the language of section 137.1, and that when the duty to support exists it may, in a proper case, be enforced in an independent action.'' (*Kresteller* v. *Superior Court, supra,* 248 Cal.App.2d at p. 548.)

In *Hudson* v. *Hudson* (1959) 52 Cal.2d 735, 744-745 [344 P.2d 295], this court overruled the holding in *Dimon* that a wife who obtains an ex parte divorce decree in a sister state may not thereafter maintain a personal action in California against her ex-husband for alimony. The reasoning in *Hudson* on the alimony issue applies by analogy to our position that the non-reimbursement rule of *Dimon* should be similarly overruled. In *Hudson* we pointed out that ''the broad proposition of the *Dimon* case that alimony cannot be granted if the

marriage has been dissolved cannot be denied, *if* the marriage was dissolved in this state and *the court had jurisdiction over both spouses.* [Citations.] But the *Dimon* case extended this proposition to cover a case where the marriage had been dissolved by an ex parte Connecticut decree procured by the wife. [We cannot] follow *Dimon* after *Vanderbilt* [(1957) 354 U.S. 416 (1 L.Ed.2d 1456, 77 S.Ct. 1360)]. . . . Under *Vanderbilt* the conclusion is inescapable that the issue of alimony which could not be decided by the divorce court, remains open for determination in a proper forum. The *Dimon* case is therefore overruled.'' (52 Cal.2d at pp. 744-745.) (Italics added.)

The father's obligation to support his minor children is a personal obligation and ''remains open for determination in a proper forum.'' ''It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.'' (*Vanderbilt* v. *Vanderbilt, supra,* 354 U.S. at p. 418 [1 L.Ed.2d at p. 1459].) Thus, in an ex parte divorce the mother cannot obtain a custody decree or child support order. (See *May* v. *Anderson* (1953) 345 U.S. 528 [97 L.Ed. 1221, 73 S.Ct. 840]; Ehrenzweig, Conflict of Laws (1959) § 82, at pp. 264-265, § 87, at p. 283.) If, however, the mother is able to secure personal (or quasi in rem) jurisdiction over the father subsequent to a dissolution of the marriage by an ex parte decree or a failure by the father to meet his child support obligations after he has left the family domicile, she should then be able to enforce the father's past as well as future support obligation. Otherwise, the father of a minor child may evade his support obligations by fleeing to, or obtaining an ex parte divorce in, a foreign jurisdiction where the mother cannot obtain personal jurisdiction. As we pointed out previously, to hold that the mother fulfilled the father's as well as her own support obligations to her children ''voluntarily'' in a case such as the present one, totally deprives the word ''voluntarily'' of any common sense meaning.[1] Thus, if the custodial parent, upon becoming able to obtain personal (or quasi in rem) jurisdiction over the non-providing parent, does

---

[1]See also *Jaeger* v. *Jaeger, supra,* 73 Cal.App. at p. 134, in which the court stated that a mother's payment of medical expenses for the child was not ''voluntary'' within the meaning of *McKay* when ''the emergency shown and her dependent condition preclude the inference that her act in procuring relief for the child was voluntary in the sense that it was deliberate, or that no reliance was placed by her on order previously made and to be made in the future by the court.'' (See also *Gay* v. *Gay* (1905) 146 Cal. 237, 242 [79 P. 885].)

not delay in seeking to enforce the latter's support obligations, the former should clearly be entitled to "reimbursement."

In sum, although I have concluded that a child support order predicated upon the divorce of the parents of a minor child and an order granting sole custody to one parent must terminate upon the remarriage of the parents and their resumption of joint custody of the child, I would not deny the mother the right to reimbursement for the support of the child in any case in which the father thereafter leaves the family and discontinues compliance with his obligation.