Filed 11/19/13  Guardianship of Morgan H. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Guardianship of MORGAN H. et al., Minors. | |
| C. P., Petitioner and Appellant, v. CHRISTINE H. et al., Objectors and Respondents | A138630 (Contra Costa County Super. Ct. No. P13-00054) |

Petitioner C. P. appeals from the probate court's order dismissing her petition for the appointment of a guardian for her two grandchildren.  The court determined it lacked jurisdiction to consider her petition for several reasons, including that Montana was the children's "home state" under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.).  C. argues the probate court erred because it had both continuing subject matter jurisdiction as the result of a previous family court ruling regarding the children's custody, and initial jurisdiction under the UCCJEA because the bulk of the time the children had lived in Montana should not have been considered by the court in determining whether that was their home state under the UCCJEA.  We affirm the probate court's order.

1

# BACKGROUND

We summarize those facts and procedural history relevant to our consideration of C.'s appellate claim. On January 22, 2013, C., through counsel, filed a petition in the probate court of the Contra Costa County Superior Court seeking the appointment of a guardian for her granddaughters, Payton H. and Morgan H., who were 9 and 8 years old respectively at the time. She declared that the parents, C.'s daughter Christine H. and the children's adoptive father, Z.H., had had a "short, domestically violent marriage" that ended in divorce in 2011, and had remarried in late 2012. The parents had physically, mentally, and emotionally abused the children for a long time, and neglected their medical needs. Also, Christine H. abused drugs and suffered from a mental disorder that affected the children's well being.

C. addressed why the probate court had jurisdiction to consider her guardianship petition, even though Christine H. and the children were living in Montana. C. contended that Christine H. had "fled" to Montana in order to avoid her legal obligations in California. She also contended that Z.H. worked and resided in Contra Costa County and, therefore, was a parent with significant connections with California. She asserted that the probate court was the appropriate jurisdiction and forum for the proceeding because almost all of the witnesses, medical records, and other court documents relevant to the merits of her petition were located in Contra Costa County or elsewhere in California. Also, C. argued, the Contra Costa County Superior Court had continuing jurisdiction to decide child custody issues pursuant to the UCCJEA because its family court had adjudicated the children's custody in the previous dissolution of marriage proceeding between Christine H. and Z.H., held before the two remarried.

The parents, appearing in propria persona, filed written responses to C.'s petition. The parents objected to the petition and denied all of C.'s negative allegations about them. They declared that Christine H. was the biological mother and Z.H. was the adoptive father of Morgan H. and Payton H. The two had married in November 2007, and Z.H. had adopted the children in February 2008. After their previous marriage had ended, they remarried each other on June 25, 2012, in Missoula, Montana. The children

were in their second year of school in Missoula and doing "wonderful" there, had made friends, and lived in a stable home.

According to the parents, the children were "fearful" of C., never had a loving relationship with her, only had had contact with her for a short time, and had been "traumatized" by her. C. had "a long history of instability, aggressive and manipulating behavior, uncontrolled rages, and irrational outbursts." Her behavior led to strained relations with Christine H., and a restraining order was filed in California in late 2011 to ensure a safe move to Missoula in December 2011.

The parents also contended that C. had misrepresented events in their previous dissolution of marriage proceeding in the family court. In fact, the family court had denied C.'s motion for joinder because she was not an indispensable party, denied her request for a stay of the judgment, and denied her request that it retain jurisdiction because, it concluded, C. should raise her issues before a Montana court. The parents also argued that the family court's previous jurisdiction over them and their children had terminated as a result of their subsequent remarriage, citing *Davis v. Davis* (1968) 68 Cal.2d 290 (*Davis*). A few days later, they filed a longer memorandum of points and authorities, in which they made additional arguments as to why the probate court did not have jurisdiction or, at the very least, should not exercise it pursuant to the doctrine of " 'inconvenient forum.' "[1]

A court investigator submitted a report to the probate court requesting that, because of his office's limited resources, the court first determine if it had jurisdiction and, if it did, continue the matter to allow the investigation to be completed. The probate court then held a hearing in March 2013 regarding the jurisdiction issues.

_____

[1] C. contends none of the parents' response papers were served on her. Nonetheless, the record suggests that C. had the opportunity to at least review these papers prior to the hearing held by the court, discussed below. The record contains an April 2013 declaration by Erin Houck, the same individual who had previously signed a proof of personal service on Z.H. of C.'s petition papers. Houck stated that he had reviewed the court files for the guardianship action and found responses filed by the parents, but did not find any indication that these responses were served on C. or her lawyer.

At the court's request, Z.H. testified briefly at the hearing. He indicated that he was the adoptive father of the children; Christine H. and the children had moved to Montana in December 2012[2] and the children had continuously lived there since that time; he took up residence in Montana in January 2012; he had a California, but not a Montana driver's license; and he resided with his parents in California at times.

After hearing argument, the court dismissed C.P's guardianship petition for lack of jurisdiction, explaining its ruling in a seven-page order. Among other things, the court rejected C.'s argument that the custody orders previously issued by the family court allowed the probate court to retain jurisdiction under the UCCJEA. The court concluded that C. did not have standing to assert any rights in the matter because she was not a party in the family court proceedings; C. was required to raise her issues before that family court because she was indirectly challenging its previous denial of her motion that it retain jurisdiction; and Christine H. and Z.H.'s 2012 remarriage "rendered any prior custody filing and decree null and void" pursuant to *Davis*, *supra*, 68 Cal.2d 290.

The probate court also ruled that it did not have jurisdiction to consider C.'s guardianship petition under Family Code section 3421, subdivision (a)(1) of the UCCJEA because the children had lived in Montana for the past 14 months or more (when six months was the relevant time period (Fam. Code, § 3421, subd. (a)(1)). Therefore, Montana, not California, was their "home state." The court also found that no evidence suggested that a court of another state did not have jurisdiction or that a court of a home state had declined to exercise jurisdiction because California was a more appropriate forum.

Finally, the court stated that, even if it did have jurisdiction, it would decline to exercise it under the doctrine of inconvenient forum for a number of reasons.

At the beginning of the hearing, the court attempted to appoint counsel for the children, but the counsel selected indicated she could not serve because of an ethical

_____

[2] Z.H. initially answered affirmatively when asked by the court if the initial move to Montana was in November of 2011. However, he later corrected the court when it referred to that date, indicating that the move was in December 2011.

4

conflict.  The court stated it was "likely" it would be appointing counsel for the children but proceeded with the hearing.  The following week, after the court issued its order dismissing C.'s guardianship petition, it issued an order appointing counsel to represent the interests of the children in the proceeding.

C. filed a timely notice of appeal.  C. filed an opening brief, but no further briefing was submitted by any parties.

## DISCUSSION

C. argues the superior court erred in dismissing her petition for several reasons. We conclude that two of those reasons lack merit and are dispositive of her appeal.

### I.  *C. P.'s Continuing Jurisdiction Claim*

C. first argues that the probate court erroneously dismissed her petition because it had continuing subject matter jurisdiction regarding custody of the children.  The family court had previously exercised this jurisdiction in ruling on the children's custody in the prior dissolution proceeding between Christine H. and Z.H.  C. argues that, as a result, the superior court, including its probate court, had continuing, exclusive subject matter jurisdiction regarding custody of the children after that time.

We reject C.'s continuing jurisdiction argument for two reasons.[3]  The first is waiver.  We do not need to discuss the details of her argument because she ignores an essential part of the legal foundation for the probate court's ruling.  Specifically, the court determined that any jurisdiction previously exercised by the family court was rendered null and void pursuant to *Davis*, *supra*, 68 Cal.2d 290.  In *Davis*, our Supreme Court recognized that, "[w]hile it appears that no California case has considered this question or one closely analogous to it, the rule as developed in other jurisdictions is that if the

---

[3] We also note that C.'s trial counsel, who is also her appellate counsel, may have conceded below that the remarriage of Christine H. and Z.H. had terminated the family court's jurisdiction.  He stated at one point during the hearing, "The remarriage is kind of a red herring because remarriage certainly ended the jurisdiction they're talking about." When the court asked if that was the jurisdiction C. was "attempting to piggyback on," counsel said no, and that C. could not go back into the family court.  Because the import of counsel's statements is not entirely clear, we do not further discuss it.

parties again intermarry[,] child custody and support orders as between themselves are thereupon terminated, as well as the jurisdiction of the court to enforce such orders, and that this is true whether or not the parents subsequently divorce again." (*Id.* at p. 292.)

By ignoring this critical aspect of the probate court's ruling, C. has waived the issue of whether *Davis* controls here. (*Hambrose Reserve, Ltd. v. Faitz* (1992) 9 Cal.App.4th 129, 133 [failure to address a point on appeal was a waiver of any challenge to the lower court's ruling on that basis], overruled on other grounds in *Trope v. Katz* (1995) 11 Cal.4th 274, 292.)

Even if C. had not waived the issue, we conclude we would be compelled to follow *Davis* here. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, C.'s argument lacks merit as well.[4]

## II. *C. P.'s "Initial Jurisdiction" Claim*

C. also argues that the probate court erroneously determined it did not have subject matter jurisdiction to make an *initial* child custody ruling. C.'s "initial jurisdiction" argument is also unpersuasive.

"It is well settled in California that the UCCJEA is the exclusive method of determining subject matter jurisdiction in custody disputes involving other jurisdictions." (*In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 376 (*Sareen*).) Among other things, a California court has jurisdiction to make an initial child custody determination if this state "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the

---

[4] Although C. is less than clear, she may also be arguing that the superior court had continuing subject matter jurisdiction because a California court ruled on the children's custody in the course of the 2005 dissolution of marriage proceeding between Christine H. and her previous husband, the children's biological father. Her counsel also briefly alluded to this proceeding in the hearing below. To the extent C. argues this on appeal, she fails to explain why such previous jurisdiction survived the later adoption of the children by Z.H., as well as the two subsequent marriages to Z.H. by the children's mother, Christine H., particularly in light of *Davis*, *supra*, 68 Cal.2d 290. Therefore, she has waived this issue. (*Hambrose Reserve, Ltd. v. Faitz*, *supra*, 9 Cal.App.4th at p. 133; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [failure to support appellate argument with legal authority grounds for waiver].)

6

commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." (Fam. Code, § 3421, subd. (a)(1).) The probate court found that the children had resided in Montana for more than 14 months prior to the date of the hearing. Therefore, Montana, not California, was the children's home state pursuant to Family Code section 3421, subdivision (a)(1).[5]

Although the court did not expressly so state, this portion of its ruling was necessarily a rejection of C.'s argument that it should construe the children's residency in Montana to be less than six months, based on case law. According to C.'s counsel in the hearing below, "once an action or proceeding is occurring in a state . . . the fact that somebody moves away does not count towards their six months somewhere else. . . . In this case there was a proceeding, *Marriage of Hites*, which ended towards the end of July. I think around the 25th of July a judgment was entered. So at the time we filed our petition, six months had not elapsed. We had to file in California. No one could have filed in Montana."

C. essentially repeats this argument on appeal, except that she asserts the family court's jurisdiction terminated on a different date, and upon the occurrence of a different event. Rather than rely on the entry of judgment, which she now acknowledges occurred on May 10, 2012, C. relies on the family court's filing of its written order denying *her* postjudgment motions, which occurred on August 2, 2012. According to C., the period between August 2, 2012, and her January 22, 2013 filing of her guardianship petition is the length of time the children should be construed as residing in Montana. Since it is less than six months, the probate court erred in ruling that it did not have initial jurisdiction to consider her petition pursuant to Family Code section 3421, subdivision (a)(1).

---

[5] Although the probate court did not expressly say so, its ruling suggests that it found, or at least assumed for the purposes of its analysis, that Z.H. was "a parent [who] continue[d] to live" in California within the meaning of Family Code section 3421, subdivision (a)(1).

C.'s appellate argument is unpersuasive for three reasons. First, she does not indicate she asserted below that the family court's jurisdiction ended on August 2, 2012, when it filed its order denying her postjudgment motions, and we have found no indication in the record that she did so. By not presenting this theory first in the court below, she has waived the argument on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 ["a party to an action may not, for the first time on appeal, change the theory of the cause of action"].)

Second, even in the absence of waiver, C. relies on an inapposite case to argue that the probate court, in determining whether the children had resided in Montana for longer than six months, should not have counted any time they lived there during the pendency of the previous family court proceeding. In the case she relies on, *Sareen*, *supra*, 153 Cal.App.4th 371, the couple involved were married in India in 2002 and moved to New York, where their daughter was born in February 2004. (*Id*. at pp. 373-374.) In August 2004, the couple traveled to India and separated; the father filed divorce and child custody proceedings in India that same month. (*Id*. at p. 374.) The parties proceeded to litigate their disputes in India. (*Ibid*.) The mother left India in November 2005, and moved to California with the child, where, in January 2006, she filed a petition for child custody in the Sacramento County Superior Court. (*Ibid*.)

One of the issues before the *Sareen* court was whether, under the UCCJEA, California could exercise jurisdiction regarding the mother's petition when the child had resided in India for a year and then moved to California, where the mother filed her petition less than three months later. (*Sareen*, *supra*, 153 Cal.App.4th at pp. 377-378.) Under these circumstances, the father argued to the trial court, India was the "home state." The trial court agreed and dismissed the mother's petition. (*Id*. at p. 378.)

The appellate court reversed. Not finding any California case law on the subject, it reviewed cases from other states that had concluded that "time spent in a forum after the filing of a child custody petition may not be counted towards the time necessary for home state jurisdiction." (*Sareen*, *supra*, 153 Cal.App.4th at p. 379.) Based on this case law, the appellate court held that "a parent may not take a child to a jurisdiction, file a

8

premature custody petition, and then use the time the child remains *in that jurisdiction pending resolution of the petition* to meet the six-month UCCJEA home state period, either in that custody proceeding or as a defense to the other parent's competing custody proceeding in another state. *To do so would condone blatant forum shopping . . . .*" (*Id.* at p. 380, italics added.) Thus, given that the child had spent less than six months in India before the father filed his custody proceeding there in August 2004, India was not the child's home state when the mother filed her petition in the Sacramento County Superior Court in January 2006. (*Id.* at pp. 380-381.)

As that portion of *Sareen* that we have italicized indicates, the court's holding was limited to particular circumstances that do not exist here. The *Sareen* court determined it should not count the time a child lives in a jurisdiction in which a parent (the father in that case) files a premature custody petition because to do so would encourage forum shopping, in a case that involves competing child custody proceedings. Here, we are not concerned with a premature child custody proceeding initiated in Montana and there are no competing child custody proceedings. Instead, C. argues that the proceeding which caused the residency "clock" for the children to be stopped was the previous family court proceeding, which was initiated in *California* in 2011 *before* C. raised her concerns about the children's custody. Nothing indicates that proceeding was initiated to forum shop regarding the adjudication of the children's custody. In short, the limited holding of *Sareen* does not apply to the present circumstances, and we can think of no good reason why the court should have excluded the period the children resided in Montana during the prior dissolution proceeding in determining whether Montana was the children's home state pursuant to Family Code section 3421, subdivision (a)(1).

Third, even if there were no waiver here and *Sareen* did apply, C.'s argument nonetheless would lack merit because more than six months *did* pass between the end of the family court proceeding and C.'s filing of her guardianship petition in probate court. *Sareen* did not address how to calculate residency time after the termination of any court proceedings and C. offers no guidance on the question, other than to assert that the children's residency should be calculated from the date the family court denied her

9

postjudgment motions on August 2, 2012. We disagree. The family court entered judgment on May 10, 2012. "The entry of judgment ordinarily terminates a trial court's jurisdiction to rule on the merits of a case," aside from considering postjudgment motions, such as those made by C. below. (*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479.) We fail to see why C.'s motions, denied by the family court, should be construed as extending that proceeding beyond entry of the May 10, 2012 judgment. Also, to conclude that these motions did so would allow forum shoppers to unilaterally shorten the period of residency used to calculate a home state just by filing meritless postjudgment motions. Therefore, we conclude that, if *Sareen* did apply here, the period of time the children should be found to have resided in Montana would be from May 10, 2012 to January 22, 2013, when C. filed her guardianship petition. Because this is longer than six months, we would agree with the trial court that Montana, not California, was the children's "home state."

Finally, C. argues that the probate court "impliedly recognized" that it had subject matter jurisdiction when it appointed counsel for the children after dismissing C.'s guardianship petition. According to C., if the court lacked jurisdiction, it lacked jurisdiction to make this appointment. Therefore, the order "demonstrates either the court's underlying belief that it did truly have subject matter jurisdiction but simply lacked the will to proceed in California or its confusion regarding the jurisdiction issue." In light of the court's dismissal of C.'s petition for lack of jurisdiction in a well-reasoned seven-page order, this argument is utterly unpersuasive.

For each and all of these reasons, we conclude the probate court did not err in concluding that Montana, not California, is the home state of the children pursuant to Family Code section 3421, subdivision (a). Given our conclusion, we have no need to, and do not, address C.'s other arguments, including that the trial court erred in relying on certain "threshold" considerations and declining to exercise jurisdiction pursuant to the doctrine of inconvenient forum.

10

**DISPOSITION**

The court's order appealed from is affirmed.

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Haerle, J.




* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.