HELEN M. RINGSTROM, Plaintiff-Appellant, v. LARRY ALLEN RINGSTROM, Defendant-Appellee.

Fourth District    No. 17203

Opinion filed November 19, 1981.

James Caleb Stanfield, of Paris, for appellant.

M. Eugene Wright, of Danville, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Marriage.

Divorce.

Remarriage.

Another divorce.

Husband now liable for child support arrearages under *first decree?*

No.

We affirm.

Plaintiff appeals the trial court's order dismissing a rule to show cause why defendant should not be held in contempt for failing to pay child support arrearages for the years 1971 to 1974, and 1976 to 1977. The parties were originally married in 1965, separated in 1971, and a decree of divorce based on mental cruelty was entered by the trial court on June 15, 1971. A negotiated property settlement was approved by the court and custody of their minor children was granted to plaintiff, with defendant to pay child support in the amount of $150 per month.

On July 18, 1977, the parties were remarried to each other. They were again divorced on May 25, 1978.

On October 30, 1980, plaintiff filed a petition for rule to show cause alleging that defendant had failed to pay child support for the years 1971, 1972, 1973, 1974, 1976, and 1977. She alleges that from June 15, 1971, until July 18, 1977—the date of a remarriage of the parties—defendant amassed child support arrearages in the sum of $6,800 after deducting payments of slightly more than $4,000 which he made during that period. Plaintiff asked the trial court to enforce the 1971 divorce decree requiring child support payments and a rule to show cause was entered by the trial court.

On January 28, 1981, a hearing was held on the rule to show cause. The trial court held, as a matter of law, that there could not be a claim for arrearages in child support based upon the 1971 decree. The court further ruled that any issue as to arrearages should have been raised in the 1978 dissolution proceedings.

A petition for rehearing and to vacate the trial court's order was denied and a written order dismissing the rule to show cause was filed on May 20, 1981.

On appeal, plaintiff argues that the remarriage of the parties to each other did not affect the validity of the 1971 divorce decree and that the trial court retained jurisdiction to enforce its provisions. Alternatively, plaintiff contends that since child support arrearages are personal obligations, the rule to show cause is supported by language in the 1978 dissolution decree to the effect that the parties are responsible for their personal debts.

The primary issue in this case is the effect of the remarriage of the parties to each other upon the prior divorce decree. Though only one

Illinois case concerning this issue has been called to our attention, *In re Marriage of Leon* (1980), 84 Ill. App. 3d 50, 404 N.E.2d 1071, it is in accord with the vast weight of authority from other jurisdictions which hold that upon remarriage of the parties to each other, the prior divorce decree is annulled and rendered void. The parties are restored to their rights as if they had never been divorced. After remarriage, the parties' relationship to the children and the duty to furnish support become exactly as they were before the divorce and upon the showing of remarriage, judgment for custody or for an amount for support of the children cannot be maintained based on the prior decree. The court simply lacks jurisdiction to reexamine the prior decree. *Jenkins v. Followell* (Okla. 1953), 262 P.2d 880; *Davis v. Davis* (Cal. App. 1967), 59 Cal. Rptr. 788, *vacated* (1968), 68 Cal. 2d 290, 437 P.2d 502, 66 Cal. Rptr. 14; *Carson v. Carson* (1930), 143 Okla. 274, 288 P. 475; *Thomas v. Thomas* (Okla. App. 1976), 565 P.2d 722; *Ex parte Phillips* (1957), 266 Ala. 198, 95 So.2d 77; *Rasch v. Rasch* (1964), 250 Miss. 885, 168 So.2d 738; *In re Marriage of Helm* (Iowa 1978), 271 N.W.2d 725.

Though each of these cases is factually distinguishable from the instant case, the theory upon which they rely is not. Illustrative is the case of *Davis*. In *Davis*, the parties were initially divorced in 1958. No order for child support was entered at that time because the husband was not a resident of California. In 1959, the parties agreed between themselves that the husband would pay $100 a month child support. A support order was then entered and made a part of the original divorce decree.

· The parties were remarried in 1960 and the husband left the country to pursue his business. In 1961 the second divorce was granted to the wife. The second decree again did not provide for any support payments because the husband was not present in California.

In 1964 the husband returned to the country, agreed to a second support order, and began making payments under its terms. The wife then brought suit to collect child support from the period between the separation that followed the remarriage and the date the second support order was entered of record. Her claim for arrearages was based on the theory that the subsequent remarriage did not nullify the first child support order. The trial court denied relief.

Though the appellate court held that the remarriage did not, *ipso facto*, disqualify the wife from maintaining an action based on the first divorce decree, the Supreme Court of California disagreed and affirmed the trial court. While the court noted that there was no basic quarrel with the notion that the father had a basic duty to support the minor children, the precise question was the effect of the remarriage upon the child support order made in the earlier divorce proceeding. Citing a number of cases from other jurisdictions, the California Supreme Court agreed with

a passage from *Lockard v. Lockard* (1951), 49 Ohio Op. 163, 102 N.E.2d 747, which concluded:

" 'Where a decree of divorce makes provision for the custody, care, control, and support of minor children of divorced parents, * * * the jurisdiction of the court over custody continues * * *.

* * *

But if the parties remarry they no longer have separate rights of custody * * *. Instead there is a resumption of the same joint right to custody which antedated the separation and the divorce * * * [and] the basis for the court's further jurisdiction ceases.

It is generally the law that remarriage of the parents terminates a divorce court's jurisdiction over the parties and their minor children.' " (*Davis*, 68 Cal. 2d 290, 292-93, 437 P.2d 502, 504, 66 Cal. Rptr. 14, 16.)

In the same opinion, the Supreme Court of California determined that the term "custody" encompassed the notion of monetary support since a custody award to the mother ordinarily carried with it a support order against the father.

The same result was reached in a different factual context in *In re Marriage of Leon* (1980), 84 Ill. App. 3d 50, 404 N.E.2d 1071. In *Leon*, the parties were married in 1972. They were divorced in La Salle County in 1976. The La Salle County decree reserved for future consideration numerous items concerning ownership of household furniture and other property.

The couples were remarried in Arizona and again divorced in Arizona. The wife returned to Illinois and sought to invoke the authority of La Salle County to determine the issues reserved in the 1976 decree. The trial court concluded that it had authority to act with respect to the personal property reserved in the prior decree despite the remarriage and subsequent divorce of the parties. The Fifth District Appellate Court, however, reversed and vacated the trial court's order on the basis that the trial court lacked jurisdiction to consider the prior decree.

The appellate court relied upon *Mitchell v. Mitchell* (1951), 171 Kan. 390, 233 P.2d 517, in concluding that the provisions of the second decree superseded provisions of the first decree with regard to the disposition of property. The appellate court held that the subsequent remarriage and redivorce of the parties divested the trial court of further jurisdiction to divide property between the parties under the tenets of the first decree.

We find the reasoning in the cited cases to be persuasive. The original divorce decree existed only because the parties sought a judicial determination of their respective rights and liabilities after the breakup of the marital relationship. Once the parties remarry each other they are restored to their respective rights as husband and wife and parents as if

they had never been divorced. The remarriage leaves nothing to be enforced by the court in the absence of a valid antenuptial agreement.

Neither logic nor the orderly administration of judicial proceedings dictates a contrary result. If, for instance, neither of the parties can successfully maintain an action against the other to modify a prior divorce decree while a subsequent marriage between the parties exists (*Wilkerson v. Hoover* (1936), 192 Ark. 337, 91 S.W.2d 274; *Carson v. Carson* (1930), 143 Okla. 274, 288 P. 475), it would be anomalous to suggest that the prior decree somehow revives after a subsequent divorce. Moreover, section 503(c)(5), (6), of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, pars. 503(c)(5), (6)) expressly provides that these issues can be preserved and determined at the time the subsequent dissolution decree is entered.

While we do not quarrel with plaintiff's theory that past due installments for child support are vested rights which a court is without authority to modify (*Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59), that conclusion is predicated upon an enforceable order being present. Since the remarriage of the parties annuls the prior order, the question of rights of the parties, vested or otherwise, is never reached.

Plaintiff also contends that irrespective of the validity of the first decree, the rule to show cause may be supported by considering the language in the 1978 dissolution decree. The second decree recites, in boilerplate fashion, that each of the parties is responsible for personal debts. Plaintiff reasons that defendant is liable under this language citing cases that have held that past due support arrearages are personal debts. *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 382 N.E.2d 7; *In re Marriage of Pickell* (1979), 76 Ill. App. 3d 855, 395 N.E.2d 673.

The trial court rejected this theory, concluding that the second divorce decree did not sufficiently protect or raise the issue of past due arrearages. The second decree provides for subsequent child support in the amount of $200 per month. It makes no specific reference to any prior debts or child support arrearages. These facts bear a striking resemblance to the case of *Calkins v. Calkins* (1942), 155 Kan. 43, 122 P.2d 750. *Calkins* was the basis for the holding in *Mitchell v. Mitchell* (1951), 171 Kan. 390, 233 P.2d 517, which was relied upon by the Fifth District in *In re Marriage of Leon* (1980), 84 Ill. App. 3d 50, 404 N.E.2d 1071.

At the time of *Calkins*, Kansas law permitted separate-maintenance orders without the necessity of subsequent divorce proceedings. The facts showed that a separate maintenance order was entered on behalf of the wife which ordered the husband to pay $70-a-month maintenance. The record was undisputed that the husband paid $425 toward this obligation. A divorce between the parties was subsequently granted, and it was again undisputed that the husband was $415 in arrears in maintenance payments

at the time the divorce was granted. The divorce decree recited that the wife was to receive $2,000 as maintenance.

The wife then attempted to sue for the unpaid $415 which accrued prior to the divorce decree. The question before the court was whether the arrearages could be enforced. The Kansas court indicated that at the time of the divorce action there was no evidence of any arrearages under the first order. The court concluded that where one spouse is indebted to the other at the time of the divorce action and a decree fixing the property rights is rendered, it will be presumed that such indebtedness is settled, adjudicated, and adjusted in that decree. If the matter is not presented at the time of the divorce, further consideration of it is barred. The court in *Calkins* noted that the divorce decree recited a $2,000 judgment for maintenance without specifically delineating that any or all of that amount was an arrearage. Without any specific agreement as to arrearages, the husband was liable only for $2,000 under the plain terms of the decree. This is the precise situation present in this case.

We must reject plaintiff's contention that the boilerplate language concerning liability for personal debts was intended to apply to debts between the parties. The customary interpretation of that provision is that it applies as between the parties only to claims made by third persons to whom either of the individuals owes sums of money or other valuable consideration. This conclusion is appropriate since the very reason property settlements are incorporated into dissolution decrees is to resolve, in specific terms, any conflicts between the parties in that regard.

(The cases cited by plaintiff are distinguishable. In both *Carroll* and *Pickell*, temporary custody and child support orders had been entered against the respective husbands prior to final dissolution. Arrearages in those support payments had accrued before the final decree was entered. In both cases, the trial courts ordered that the past due payments be deducted from proceeds of the sale of the marital home prior to the division of the proceeds between the parties. Both appellate courts reversed on the theory that past due support payments became debts of the individuals obligated to pay and could not be reduced or excused by the court. In those cases, the temporary support decrees were specific and unequivocal. The debt accrued as a direct consequence of the failure to comply with the order. In this case, no corresponding factual relationship exists since the debt, if any, predated the second dissolution proceeding and can only be maintained by a tenuous inference.)

Affirmed.

TRAPP, P. J., and LONDRIGAN, J., concur.