**Joseph PALACCI**

v.

**Carol PALACCI.**

Supreme Judicial Court of Maine.

Argued March 5, 1992.
Decided Sept. 14, 1992.

Jill P. Allen (orally), Michael P. Messerschmidt, Preti, Flaherty, Beliveau & Pachios, Portland, for plaintiff.

Kenneth P. Altshuler (orally), Mittel, Asen, Eggert & Hunter, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

This case arises from the second marriage and divorce of Joseph Palacci and Carol Palacci, and requires us to review the merits of that second divorce judgment and the effect that the second marriage had on the enforceability of the child support order contained in the first divorce judgment.

Joseph appeals from the second divorce judgment entered in the Superior Court (Cumberland County, *Alexander, J.*) contending error in the designation and distribution of marital and nonmarital property. Joseph also appeals from the denial of his motion in the nature of relief from a child support arrearage order entered in the Superior Court (Cumberland County, *Beaudoin, J.*) during the pendency of the second divorce action, but arising from a provision contained in the first divorce judgment. Finding no error or abuse of discretion in the second divorce judgment, we affirm. We agree with Joseph, however, that because the order of arrearage based on his child support obligation set out in the first divorce judgment was improperly entered, his motion should have been granted. We therefore vacate that order and remand to the Superior Court.

Joseph and Carol Palacci were first married in New York in 1974. Two children were born to the couple in the early years of the marriage. The Palaccis lived apart for most of this first marriage, with Carol in New York with the children, and Joseph in Maine. The couple was divorced in Maine in 1983 in the Superior Court (Cumberland County). The divorce decree ordered that Joseph pay to Carol $100 per week per child as support for the two children. The court also provided that the residence at 33 Oakdale Street, Portland, was Joseph's nonmarital property.

The parties lived apart for three years and during this time, Joseph fell into considerable arrears on the child support payments. In 1986, Joseph and Carol began spending time together and in the summer of that year, Carol learned that she was pregnant by Joseph. Joseph and Carol discussed remarriage at that point and, as an inducement to remarriage, Joseph offered to transfer title to the Oakdale Street home to Carol. On July 31, 1986, Joseph did convey the Portland property to Carol by quitclaim deed. The Palaccis were remarried in New York on August 26, 1986.

As was the case in the first marriage, the couple for the most part lived separately, with Carol and the children in New York and Joseph in Portland at the Oakdale Street residence. Joseph sought to dissolve the second marriage by filing a complaint for divorce in the Superior Court in August of 1989. Several months later,

while the second divorce complaint was still pending, Carol filed a motion in the Superior Court for enforcement of Joseph's support obligation set out in the 1983 divorce judgment, and requested that Joseph be held in contempt for arrearages owed from the time of the first divorce to the remarriage.

In June 1990, Carol's motion to enforce the 1983 divorce judgment was granted and the court (*Beaudoin, J.*) ordered Joseph to pay to Carol $200 per week until the child support arrearage was paid in full. Joseph, representing himself, requested a rehearing on the matter. His motion was denied. Although Joseph did not appeal the order on arrearage, he subsequently obtained counsel and, on April 12, 1991, filed a motion to set aside or reconsider the arrearage order. The motion was in the nature of, although not so labeled, a motion for relief from judgment pursuant to M.R.Civ.P. 60(b) and was grounded on the fact that the remarriage of the parties rendered the support order embodied in the 1983 divorce judgment unenforceable. The court denied the motion as untimely filed and also concluded that Joseph failed to show that the order to pay arrearages was void or that any other reason existed justifying relief. Two months later, in the second divorce action, the court (*Beaudoin, J.*) ordered that Joseph pay $129 per week to Carol for child support pending divorce, but only if he should fail to pay the $200 per week arrearage based on the 1983 divorce judgment.

The second marriage was dissolved by a May 1991 divorce judgment. The court (*Alexander, J.*) ordered Joseph to pay $129 per week for child support unconditioned on the payment of arrearage in the first divorce. The court also determined that the residence at 33 Oakdale Street was Carol's separate nonmarital property. In addition, the court awarded Carol a 1984 Toyota, though recognizing that it was Joseph's nonmarital property. Joseph contends that it was improper to award Carol his nonmarital property and further contends that, because of certain expenditures he made during the marriage, the Oakdale Street property had a marital component

that should have been recognized and distributed.

Joseph filed timely notices of appeal from both the denial of his motion to set aside the arrearage order and from the divorce judgment and the appeals were consolidated for the purposes of consideration by this court.

### I. Order to Pay Arrearages Based on 1983 Judgment

■ We have not had occasion to state specifically what effect remarriage between the parties to a prior divorce has on a child support order that is part of the initial divorce judgment. The great majority of jurisdictions that have addressed the issue have held that on remarriage, a prior order of child support becomes unenforceable. *E.g., Ringstrom v. Ringstrom*, 101 Ill.App.3d 677, 57 Ill.Dec. 193, 193–94, 428 N.E.2d 743, 744–45 (1981) (collecting cases). Reasons of public policy and common sense compel us to do likewise. When previously divorced parties remarry, the "parties are restored to their rights as if they had never been divorced. After remarriage, the parties' relationship to the children and the duty to furnish support become exactly as they were before the divorce and upon the showing of remarriage, judgment for custody or for an amount for support of the children cannot be maintained based on the prior decree." *Id.,* 57 Ill.Dec. at 194–95, 428 N.E.2d at 744–45; *see also Davis v. Davis,* 68 Cal.2d 290, 66 Cal.Rptr. 14, 15, 437 P.2d 502, 503 (1968) (collecting cases); *Dunlap v. Dunlap,* 88 Okl. 200, 212 P. 608, 609 (1923); 27B C.J.S. *Divorce* § 323(k) (1959) (remarriage between parties terminates authority of court with respect to maintenance of children). The decisions of those jurisdictions, which we now join, are consistent with the objective of reestablishment of the family for the benefit of both the children and the parties.

■ Carol contends that even if her remarriage to Joseph made the 1983 support order unenforceable, Joseph failed to properly preserve that issue in the Superior Court, and his post-trial motion was un-

timely and amounts to an impermissible collateral attack. We disagree. The court denied Joseph's April 12, 1991 motion concerning the order of support arrearages as untimely (not within the 10–day requirement of M.R.Civ.P. 59(e)) and lacking in substantive merit. Although the motion was styled as a motion for reconsideration or to set aside the order, it is clear from the memorandum of law accompanying the motion that Joseph sought relief under the provisions of M.R.Civ.P. 60(b), which states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (6) any other reason justifying relief from the operation of the judgment.
>
> The motion shall be made within a reasonable time. . . .[1]

M.R.Civ.P. 60(b)(6).

■ Relief pursuant to Rule 60(b)(6) is altogether appropriate in the circumstances of this case. The state has a strong interest in preserving the family unit. *See Mattson v. Mattson*, 376 A.2d 473, 476 (Me.1977); *Deblois v. Deblois*, 158 Me. 24, 177 A.2d 199, 202 (1962). Unity of the family would be weakened if remarried spouses could seek to enforce provisions of prior divorce judgments dealing with child support or child custody. If the parties are seeking to dissolve their subsequent marriage, then the divorce proceeding on the second marriage is the proper forum for resolving issues of child support and child custody. Joseph had filed a complaint for divorce in August of 1989, and several months later Carol sought enforcement of the 1983 judgment. Any issue of reimbursement for her expenditures on behalf of the children prior to the remarriage also should be addressed in the second divorce proceeding. The existence of the pending divorce proceeding provides ample justifica-

tion for the trial court, pursuant to its equitable powers under Rule 60(b)(6), to set aside its arrearage order based on the prior divorce judgment. Moreover, Joseph's motion, brought while the second divorce action was still pending, was filed "within a reasonable time" of the court's order on arrearages.

## II. Property Division in Second Divorce Judgment

### A.

In his appeal of the divorce judgment, Joseph contends the court erred in its determination that the Oakdale Street residence was Carol's nonmarital property. He argues that the property should be his nonmarital property, or, alternatively, if Carol is the owner, that the property is partly marital because marital income was expended towards its maintenance and improvements.

■ Carol did not acquire the property on Oakdale Street during the second marriage. Joseph conveyed that property to Carol prior to the second marriage as an inducement to the marriage and she never reconveyed any part of it to him. Therefore, there is no presumption that the property is marital, *see* 19 M.R.S.A. § 722–A(3), and absent other evidence, the property is nonmarital and had to be distributed to Carol. *See West v. West*, 550 A.2d 1132, 1133 (Me.1988). Moreover, we are unpersuaded by Joseph's contention that because Carol did not pay for the property it is subject to a constructive trust for the benefit of Joseph.

■ Relying on *Hall v. Hall*, 462 A.2d 1179 (Me.1983), Joseph further contends that because marital funds were used to maintain and improve the property, it is partly marital and a portion of its value should have been set aside to him. Pursuant to *Hall*, if the value of otherwise nonmarital property is enhanced by the use of marital funds or marital effort, then the property, to the extent of that enhance-

---

1. Because we find Joseph was clearly entitled to relief pursuant to M.R.Civ.P. 60(b)(6), we need not address his contention that he was entitled to relief under M.R.Civ.P. 60(b)(4) because the

1983 order became void on the occasion of his remarriage. *See Northeast Bank v. Crochere*, 438 A.2d 266, 268 (Me.1981).

ment, becomes marital. *Hall,* 462 A.2d at 1182. It was, however, Joseph's burden to establish "the amount by which the use of marital funds has enhanced the value of the property." *Id.; Macdonald v. Macdonald,* 532 A.2d 1046, 1050 (Me.1987). The court made no such findings, and no additional findings were requested. *See* M.R.Civ.P. 52. On this record, the court was not compelled to find that the value of the Oakdale Street property was enhanced by marital funds or marital effort. *See Harmon v. Emerson,* 425 A.2d 978, 981–82 (Me.1981).

### B.

■ There were three automobiles used by the parties. The divorce judgment provided that those vehicles remain with the party actually using them. Joseph retained the 1987 BMW and a 1983 Toyota, and Carol retained the 1984 Toyota Cressida. Joseph contends that it was clear error for the court to allow Carol to retain the 1984 Toyota because it was Joseph's nonmarital property. We disagree. The divorce judgment provided that the primary physical residence of the children be with Carol. Carol's only mode of transportation was the 1984 Toyota Cressida. The court, although recognizing that the vehicle was Joseph's separate property, nevertheless allowed Carol to retain the car. Although nonmarital property is not subject to distribution in the same way as marital property, *see West,* 550 A.2d at 1133, the court is vested with broad discretion to address Joseph's obligation to provide support for his wife and three children. By allowing Carol to have the vehicle she presently uses, the court was acting in a practical way, providing that an asset of Joseph continue to serve as transportation for Carol and the children. We decline to disturb the court's decision.

The entry is:

In CV–83–532: Order denying relief from judgment vacated. Remanded with direction to vacate the judgment entered on June 25, 1990.

In CV–88–1089: Judgment affirmed.

All concurring.