503 S.E.2d 516

**Pamela Jane GRIFFIS, Plaintiff,**

v.

**James Lyle GRIFFIS, Defendant,**

**Child Support Enforcement Division, West Virginia Department of Health and Human Resources, Petitioner.**

**Kimberly O. SHREVE, Plaintiff,**

v.

**Steve Allen SHREVE, Defendant,**

**Child Support Enforcement Division, West Virginia Department of Health and Human Resources, Petitioner.**

**Shirley Diann MITCHELL, Plaintiff,**

v.

**Thomas G. MITCHELL, Defendant,**

**Child Support Enforcement Division, West Virginia Department of Health and Human Resources, Petitioner.**

**Nos. 24628–24630.**

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1998.

Decided May 21, 1998.

Ilene S. Schnall, Deputy In–House Counsel, Charleston, for Plaintiff, West Virginia Department of Health and Human Resources, Child Support Enforcement Division.

DAVIS, Chief Justice:

Two identical questions have been certified to this Court by the Circuit Court of Boone County in three separate cases. These questions ask us to determine the effect of the marriage, remarriage or cohabitation of parents on a valid preexisting order for child support and on unpaid child support that accrued prior to the marriage or remarriage of the parents. We conclude that the marriage or remarriage of parents automatically terminates the preexisting child support order; however, mere cohabitation does not. We further conclude that child support arrearages that accumulated prior to the marriage or remarriage of the parents are not

nullified as a result of the marriage or remarriage.

## I.

### FACTUAL AND PROCEDURAL HISTORY

#### A.

##### *Griffis*

Three children had been born of the marriage of James and Pamela Griffis by the time they divorced in June of 1979. At the time of the divorce, the three children were approximately eleven, four-and-one-half, and two-and-one-half years old. The divorce decree granted custody of the three minor children to Pamela Griffis and ordered James Griffis to pay child support in the amount of $166 per child, per month, for a total monthly support amount of $498. James failed to make any of the ordered child support payments. Pamela received assistance from Aid to Families with Dependent Children [hereinafter "AFDC"] for the months of June and July, 1979.

In June, 1980, the couple remarried. By this time, James was in arrears on his child support obligation in the amount of $6,141.13.[1] Upon the remarriage of the couple, the Boone County office of the Child Support Enforcement Division [hereinafter "CSED"][2] ceased calculating James' child support obligation. In addition to the child support arrearages, James owed the State $498 for the aforementioned AFDC benefits.

Thereafter, in February 1981, the couple divorced a second time. Custody of the minor children was again awarded to Pamela. James was ordered to pay child support in the amount of $167 per child, per month, for

1. This amount includes the principal balance of accrued, unpaid child support installments and statutory interest. *See* Syl. pt. 5, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987) ("Mature alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due."); W. Va. Code § 56–6–31 (1981) (Repl.Vol.1997) (mandating, in part, that "every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof."); W. Va.Code § 48A–1–3(a) (1996) (Repl. Vol.1996) (providing for accrual of interest on

outstanding principal of child support obligation).

2. We refer to the Child Support Enforcement Division by its statutory name. *See* W. Va.Code § 48A–2–12 (1997) (Supp.1997) (establishing Child Support Enforcement Division). We note, however, that under the direction of Joan Ohl, Secretary of the West Virginia Department of Health and Human Resources, the Division operates under the name "Bureau for Child Support Enforcement."

a total monthly support amount of $501. Once again, James failed to make any child support payments. Pamela received AFDC benefits from June, 1982, through February, 1984.

In May, 1984, the couple married a third time. The amount of child support that had accrued, but was not paid by James, between the couple's second divorce and third marriage was $19,630.87. James also owed the State $4,482 for the AFDC benefits Pamela received between June, 1982, and February, 1984.

At some point, proceedings directed toward a third divorce were initiated. However, the action was dismissed due to the couple's reconciliation. James and Pamela remain legally married. CSED records indicate that James currently owes Pamela a total of $61,741.90 in child support arrears and owes the State a total of $581.83 for AFDC benefits paid to Pamela.[3]

### B.

#### Shreve

Kimberly O. and Steve A. Shreve were married in July, 1975. On September 8, 1987, the couple separated. Kimberly requested public assistance. The assistance was approved on September 11, 1987. Kimberly and Steve were granted a divorce by order of the Circuit Court of Boone County in November, 1987. Kimberly was awarded custody of the couple's two children, who were then approximately seven-and-one-half and three-and-one-half years old. Steve was ordered to pay Kimberly $249 per month in child support. Steve fulfilled his child support obligation until June, 1988, when he and Kimberly reconciled.[4] Apparently due to this reconciliation, the CSED ceased tabulation of Steve's child support obligation in

June, 1988.[5] The couple remarried in August, 1991.

Kimberly and Steve separated a second time in August, 1994, and Kimberly applied for AFDC benefits. As a result of the AFDC application, there was an automatic referral to the CSED and a child support case was opened. Kimberly filed for divorce in October, 1994, and the CSED began collecting child support payments from Steve in December, 1994. By temporary order, the Circuit Court of Boone County awarded custody of one of the couple's two children to Kimberly, and Steve was awarded custody of the other child. In addition, Steve was ordered to pay Kimberly $450 per month for support of the child in Kimberly's custody.[6] The divorce became final in August, 1996. The provisions for child custody and support that were provided in the temporary order were repeated, without modification, in the final order granting the divorce. As of June 1, 1997, Steve was in arrears to Kimberly in the amount of $550.41.

### C.

#### Mitchell

By an order entered on October 2, 1978, the Circuit Court of Boone County found that Thomas G. Mitchell was the father of a child born to Shirley Mitchell on September 8, 1975. Pursuant to the order, Thomas was required to pay Shirley $75 per month for support of the child. The payments were to begin on October 1, 1978. Also in October, 1978, Shirley began receiving AFDC benefits. She continued receiving AFDC benefits through March, 1979. As a result of the AFDC benefits paid to Shirley, Thomas owed the State of West Virginia $300. Meanwhile, in November, 1978, a second child was born to Thomas and Shirley.[7] The couple married in July, 1979. As a result of the marriage,

---

3. Income tax intercepts have offset a portion of the State debt.

4. Although the couple reconciled, at that time they did not remarry.

5. Apparently, prior to the couple's reconciliation, Steve had failed to pay a small tax offset. The tax intercepts for the money owed to the State were received in March, 1993, and the CSED's case on the Shreves was then closed.

6. Prior to the temporary order, Steve paid $300 per month in child support.

7. Although no formal paternity action was filed at the time of the child's birth, a subsequent divorce order found that Thomas was the child's father.

the CSED ceased calculating Thomas' child support obligation to Shirley. At the time of the marriage, Thomas still owed $300 to the State and also owed Shirley $302.27 in unpaid child support.

The couple subsequently divorced in April, 1988. Custody of the couple's two minor children was awarded to Shirley, and Thomas was ordered to pay Shirley $200 per month for support of the two children. Shirley again received AFDC benefits from April, 1988, through May, 1989, and from February, 1990, through December 1990. The AFDC benefits received by Shirley created a corresponding debt for Thomas in the amount of $5,000.

Shirley and Thomas were married a second time in December 1990. The CSED again ceased calculations on the child support obligation upon the remarriage of the couple. At that time, Thomas was indebted to the State in the amount of $5,147. He also owed Shirley $2,415.48 in unpaid child support. Thereafter, Thomas and Shirley separated again in August, 1995. Following the separation, Shirley received AFDC benefits from September, 1995, through December, 1996. No order for child support has been entered since this separation. As of June 1, 1997, Thomas owed Shirley $4,024.24 in child support arrears and owed the State $5,147 [8] for AFDC benefits received by Shirley.

### D.

### Certified Questions

In each of the above described cases, the CSED motioned the circuit court to certify certain questions of law to this Court for resolution. Deciding these motions by three separate orders,[9] the circuit court certified two questions to this Court. Because the questions in each case are identical, we have consolidated the cases for the purpose of addressing the following questions certified by the Circuit Court of Boone County:

### Question 1

Whether either divorce order automatically terminated upon the cohabitation, marriage, or re-marriage of the parties?

### Answer of the Circuit Court

Each divorce order terminated automatically upon the marriage or re-marriage of the parties, but not upon cohabitation.

### Question 2

Whether child support arrearages were eliminated upon the cohabitation, marriage, or re-marriage of the parties?

### Answer of the Circuit Court

Child Support arrearages were eliminated upon the marriage or re-marriage of the parties, with the exception of arrearages that were assigned to the State of West Virginia. Arrearages were not eliminated upon the cohabitation of the parties.

Pursuant to our authority to do so, we rephrase the certified questions before us as follows: [10]

### Question 1

When the parents of a minor child or children marry, remarry or cohabit, does any pre-existing child support order/obligation regarding the child or children automatically terminate with respect to payments thereafter accruing?

---

**8.** This is the amount of arrearages owed to the State as indicated in the CSED's brief. It appears that this amount does not include the AFDC benefits received by Shirley from September, 1995, to December, 1996. However, there is nothing contained in the record submitted to this Court from which to ascertain the correctness of this amount.

**9.** The "Order of Certification" in the Griffis case was entered on May 6, 1997; similar orders were entered in the Shreve and Mitchell cases on June 2, 1997.

**10.** See W. Va.Code § 51–1A–4 (1996) (Supp. 1997) ("The supreme court of appeals of West

Virginia may reformulate a question certified to it."); Syl. pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in W. Va.Code, 51–1A–1, *et seq.* and W. Va.Code, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court."). *See, e.g., Potesta v. United States Fidelity & Guar. Co.*, 202 W. Va. 308, 313, n. 9, 504 S.E.2d 135, 140, n. 9 (1998).

## Question 2

When a court order requires payment of child support by one parent to another, and the parent who is required to make such payments has failed to make any or all of the required child support payments, does the marriage, remarriage or cohabitation of the parents operate to nullify the accumulated arrearages?

Before this Court, the CSED contends that no statutes or cases in West Virginia squarely deal with issues regarding the status of child support and child support arrearages upon the marriage, remarriage or cohabitation of the parents. It further submits that its field offices resolve such issues on a case by case basis, which results in inconsistent resolutions. The CSED also argues that there is a lack of consistency among the various circuit courts of this state in dealing with these issues.

## II.

## STANDARD OF REVIEW

■ We have repeatedly stated that we apply a *de novo* standard when reviewing certified questions. *See* Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996) ("The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."). *See also Potesta v. United States Fidelity & Guar. Co.,* 202 W. Va. 308, 314, 504 S.E.2d 135, 141 (1998) (citing *Gallapoo*); Syl. pt. 1, *Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997) (same).

## III.

## DISCUSSION

A. *When the parents of a minor child or children marry, remarry or cohabit, does any pre-existing child support order/obligation regarding the child or children automatically terminate with respect to payments thereafter accruing?*

■ The Circuit court answered this question by ruling, in essence, that when

parents of a child or children marry or remarry, any pre-existing child support order regarding the child or children automatically terminates; however, such an order does not terminate if the parents merely cohabit. The CSED urges us to adopt the circuit court's view.

This certified question presents an issue that has not previously been addressed by this Court. In answering this question, we first consider the effect of the remarriage of a divorced couple on the child support provisions contained in the original divorce decree. The CSED submits that the circuit court's ruling on this issue represents the majority rule. Indeed, our review of this area of the law reveals that the general rule is that the remarriage of divorced parents to each other automatically nullifies child custody and support provisions contained in a previously entered order dissolving a prior marriage.[11]

The Supreme Judicial Court of Maine was asked to resolve this issue in *Palacci v. Palacci,* 613 A.2d 951 (Me.1992). Stating that the issue was one of first impression, the *Palacci* court went on to observe "[t]he great majority of jurisdictions that have addressed the issue have held that on remarriage, a prior order of child support becomes unenforceable." *Id.* at 953 (citing *Ringstrom v. Ringstrom,* 101 Ill.App.3d 677, 57 Ill.Dec. 193, 193–194, 428 N.E.2d 743, 744–45 (1981); and indicating that the *Ringstrom* opinion contained citations for other cases in accord).

Similarly, in *Davis v. Davis,* 68 Cal.2d 290, 292, 66 Cal.Rptr. 14, 15–16, 437 P.2d 502, 503 (1968), the Supreme Court of California recognized:

[T]he rule as developed in other jurisdictions is that if the parties again intermarry[,] child custody and support orders as between themselves are thereupon terminated, as well as the jurisdiction of the court to enforce such orders, and that this is true whether or not the parents subse-

---

11. While the general rule is that the remarriage of divorced parents to each other automatically nullifies child custody and support provisions contained in a previously entered or-

der dissolving a prior marriage, the impact of the nullification is apparently interpreted somewhat differently among various jurisdictions. See discussion *infra* Section III. *B.*

quently divorce again. (See *Lockard v. Lockard* (1951) 63 Ohio L. Abs. 549, 49 Ohio Ops. 163 [102 N.E.2d 747, 748]; *McDaniel v. Thompson* (Tex.Civ.App., 1946) 195 S.W.2d 202, 203–204; *Jenkins v. Followell* (Okla., 1953) 262 P.2d 880, 882; *Dunlap v. Dunlap* (1923) 88 Okla. 200 [212 P. 608, 609]; *Ex parte Phillips* (1957) 266 Ala. 198 [95 So.2d 77]; *Eppes v. Covey* (Fla.App., 1962) 141 So.2d 747, 748; *Rasch v. Rasch* (1964) 250 Miss. 885 [168 So.2d 738, 743]; *Lowe v. Lowe* (1909) 53 Wash. 50 [101 P. 704, 705]; *Oliphant v. Oliphant* (1928) 177 Ark. 613 [7 S.W.2d 783, 786–787]; *Cain v. Garner* (1916) 169 Ky. 633 [185 S.W. 122, Ann. Cas. 1918B 824, L.R.A. 1916E 682]; 27B C.J.S., Divorce, § 323, subd. h, p. 730; 24 Am.Jur.2d, Divorce and Separation, § 805, p. 915.).

(Footnote omitted). The *Davis* court recognized that some of the cases it cited in the opinion spoke "only of custody"; however, the court explained the relevancy of these cases by noting that "a custody award to [one parent] ordinarily carries with it a support order against the [other parent]." *Davis* at 292, 66 Cal.Rptr. at 15–16, 437 P.2d at 504. *See also In re Marriage of Doria*, 855 P.2d 28, 29–30 (Colo.Ct.App.1993) ("As a general rule, when the parties to a divorce remarry each other, the court's jurisdiction over the parties is terminated and the provisions of the prior decree for matters of child support, custody, and maintenance are nullified." (citations omitted)); *Warren v. Warren*, 213 Ga. 81, 81', 97 S.E.2d 349, 350 (1957) ("The remarriage of the parties nullified the [divorce] decree ... and restored the parental rights of the parties to the same extent as if no divorce had ever been granted." (citations omitted)); *Hildebrand v. Hildebrand*, 239 Neb. 605, 609, 477 N.W.2d 1, 4 (1991) (commenting "[w]e agree with the statement in *Schaff v. Schaff*, 446 N.W.2d 28, 31 (N.D. 1989), that 'if the parties to a divorce decree remarry each other, they no longer have separate rights of custody and separate obligations for future support; rather, the same joint rights to custody and joint obligations for future support which antedated the divorce are resumed,'" (additional citations omitted); and concluding that "[w]hen the parties to this action remarried ... all future

child support obligations under the [prior divorce decree] were terminated"); *Slape v. Slape*, 553 S.W.2d 171, 173 (Tex.Civ.App. 1977) ("the remarriage of divorced parties renders ineffective or inoperative the provisions in a divorce decree relating to custody of children" (citations omitted)). *See generally* 24 Am.Jur.2d *Divorce and Separation* § 992, at 985 (1983) ("If the parties again intermarry after the granting of a divorce and order for custody, the order for custody is rendered inoperative."); 27C C.J.S. *Divorce* § 692, at 323 (1986) ("A remarriage between the parties themselves ordinarily terminates the jurisdiction of the court with respect to maintenance of their children.").

The rationale for this rule was fittingly explained by the Missouri Court of Appeals in *In re Marriage of Root*, 774 S.W.2d 521 (Mo.Ct.App.1989). In that case the Missouri court impliedly adopted the general rule, reasoning:

It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree. That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support *that would have become due after the remarriage.*

*Id.* at 523. Another court has similarly explained that:

When previously divorced parties remarry, the "parties are restored to their rights as if they had never been divorced. After remarriage, the parties' relationship to the children and the duty to furnish support become exactly as they were before the divorce and upon the showing of remarriage, judgment for custody or for an amount for support of the children cannot be maintained based on the prior decree."

*Palacci v. Palacci*, 613 A.2d 951, 953 (citations omitted).

In addition to determining the effect the remarriage of divorced parents has on child support awarded in conjunction with a prior divorce, we are further asked to determine

the effect of a marriage on a prior order mandating child support when the parents were not previously married. We find no reason to alter the general rule under these circumstances. At least one court has reached this conclusion in a case involving a child support judgment that was entered as part of a paternity proceeding, as opposed to child support in connection with a divorce, where the parents were married subsequent to the child support judgment. *Schaff v. Schaff*, 446 N.W.2d 28 (N.D.1989).

The parties to the *Schaff* case had a child prior to their marriage. A paternity judgement was entered against the father, and he was ordered to pay child support.[12] Approximately one year later, the couple married. During a subsequent divorce proceeding, issues involving the previous child support order were raised. The court found that the factual scenario before it was like that of divorced parents who remarry each other. The court recognized that "[g]enerally, when divorced persons remarry each other, their remarriage nullifies the divorce court's order for child custody ... and future installments of child support." *Schaff* at 31. (citations omitted) (footnote omitted). The court reasoned that "if the parties to a divorce decree remarry each other, they no longer have separate rights of custody and separate obligations for future support; rather, the same joint rights to custody and joint obligations for future support which antedated the divorce are resumed." *Id.* (citations omitted). The *Schaff* court further observed:

> The paternity action, as well as the divorce action, each involves a determination of the separate rights and liabilities of parents for their children. While a paternity action and a divorce action establish the *sep-*

*arate* rights and liabilities of parents, those parents' subsequent marriage or remarriage establishes anew the parents' *joint* rights and liabilities for custody and support of their children replacing their former separate rights and liabilities.

*Id.* at 32. The court went on to hold:

> [W]hen parents of a child born out-of-wedlock marry each other, the child custody and future support provisions of the paternity judgment are nullified and replaced by the law governing the rights and obligations of married parents to their children. If those parents subsequently seek a divorce, the divorce laws are then applicable to the determination of child custody and support.

*Id.* (footnote omitted). Thus, it appears the marriage of a minor child's previously unwed parents would likewise extinguish any pre-existing order of child support decreed for the benefit of such child.

With respect to the impact of the parents' cohabitation on an existing child support obligation, the CSED suggests that little has been said about this issue in any jurisdiction. While the CSED does not cite any case law, it suggests two policy reasons for adopting the rule that cohabitation of the parents should not terminate child support obligations.[13] First, the CSED argues that it is easier to cohabit than to marry or remarry, thus cohabiting couples are more likely to separate and then reunite. Consequently, the resulting onslaught of cases would create an accounting nightmare for CSED. Second, one parent may force the other, through domestic violence, to cohabit or to commit fraud by asserting a non-existent reconciliation. The CSED contends that because it is

---

12. In this instance, the child support took the form of a lump-sum payment into an annuity that provided the child's mother a monthly dividend until the child reached age eighteen, and "treasury bonds with a future value of $20,000." *Schaff v. Schaff*, 446 N.W.2d 28, 29 (N.D.1989). When the child reached eighteen years of age, she was to receive $10,000 of the treasury bonds, with the remaining bonds to be distributed to her when she attained the age of twenty-two. *Id.*

13. The CSED notes that, with respect to case closure criteria, it treats married and cohabiting couples identically. According to the CSED, its

written policy states that upon written acknowledgment from cohabiting parties (regardless of their marital status) where no arrearages are due and no wage withholding order is in effect, a CSED case shall be closed. CSED Policy 10000.10(12). A copy of this policy was not included with the record submitted to this Court. Consequently, we cannot conclusively ascertain whether CSED Policy 10000.10(12) is consistent with this opinion; however, based upon the CSED's representations, it appears that it is not. To the extent that CSED policy is inconsistent with this opinion, it is hereby superseded.

easier to cohabit than to marry, the risk of coercion is greater.

■ We find that the substantial differences that exist between marriage and cohabitation unquestionably compel the conclusion that cohabitation, without marriage, is insufficient to automatically nullify the provisions of an existing court order related to child custody and support. Since common law marriages may not be validly formed in this State, *Goode v. Goode,* 183 W.Va. 468, 396 S.E.2d 430 (1990),[14] cohabitation does not legally unite a family as does marriage. Furthermore, cohabitation simply does not require the same formalities as marriage.[15] More important than the formalities of entering the bond of marriage, though, are the formalities required to terminate the marriage. *See* W.Va.Code §§ 48–2–1 et seq. In this regard, we find it significant that termination of a marriage requires a legal procedure that includes built-in protections for the best interests of the parties' child or children. *See, e.g., State ex rel. Paul B. v. Hill,* 201 W.Va. 248, 257, 496 S.E.2d 198, 207 (1997) ("Tempered with the State's *parens patriae* interest is the court's obligation to consider the 'best interests of the child [as] paramount.'" (citations omitted)); *Carter v. Carter,* 196 W.Va. 239, 246, 470 S.E.2d 193, 200 (1996) ("In ... custody matters, we have traditionally held paramount the best interests of the child, a position from which we will not deviate." (citations omitted)).

Upon the termination of a marriage or second marriage between parents, custody and support issues will be visited anew. *See* W. Va.Code § 48–2–15 (1996) (Repl.Vol. 1996). Thus, the child will not be harmed by the fact that an earlier child support order

was terminated upon the marriage or remarriage of the parents. There is no such protection in place when a couple ceases to cohabit. Consequently, if cohabitation were sufficient to terminate a prior order of child support, a child could, and most likely would, be significantly harmed if and when his or her parents cease to cohabit. In the absence of a legally significant unification of the family, we must decline to find that the provisions of a court order mandating child support are automatically terminated.

We therefore hold that when the parents of a minor child or children marry or remarry, any sums of child support subsequently due under a preexisting child support order, entered by a court of competent jurisdiction, regarding that child or children, automatically terminates and no further child support will accrue under that order from the date of the subsequent marriage forward. However, where the parties do not marry or remarry, but simply cohabit, the preexisting order does not automatically terminate, but remains in full effect, and the child support obligation continues as defined in the order.

B. *When a court order requires payment of child support by one parent to another, and the parent who is required to make such payments has failed to make any or all of the required child support payments, does the marriage, remarriage or cohabitation of the parents operate to nullify the accumulated arrearages?*

The Circuit Court of Boone County answered this question by ruling that when a court order requires payment of child support by one parent to another, and the par-

---

14. While common law marriages may not be formed in this state, we do recognize the validity of common-law marriages formed in states that permit such marriages. *See Goode v. Goode,* 183 W.Va. 468, 473 n. 8, 396 S.E.2d 430, 435 n. 8 (1990) ("Our decision in this case does nothing to alter our recognition of common-law marriages which are contracted in other states and recognized as valid therein. 'The courts of this state will recognize as valid and will accord legal effect to a common-law marriage created or consummated in another state if common-law marriages are recognized as valid in that state.'" (quoting *State v. Bragg,* 152 W.Va. 372, 375–76, 163 S.E.2d 685, 687–88 (1968))).

15. The formalities required of a couple planning to marry include the completion of an application for a marriage licence, W. Va.Code § 48–1–6 (1993) (Repl.Vol.1996); the issuance of a license, W. Va.Code § 48–1–5 (1969) (Repl.Vol.1996); the requirement that the licence be filed with the appropriate county clerk, W. Va.Code § 48–1–10 (1969) (Repl.Vol.1996); and the requirement that the county clerk maintain a record of marriage licenses, W. Va.Code § 48–1–11 (1969) (Repl.Vol. 1996).

ent who is required to make such payments has failed to make any or all of the required child support payments, the marriage or re-marriage of the parents operates to nullify the accumulated arrearages; however, the mere cohabitation of the parents does not operate to nullify such arrearages. In addition, the court ruled that arrearages that are assigned to the State of West Virginia are not eliminated by the marriage, remarriage or cohabitation of the parents.

The CSED urges us to answer this question in the negative. The CSED argues that nullifying child support arrears is inconsistent with West Virginia law and contrary to the weight of authority from other jurisdictions. While there is apparently no case law addressing this precise issue, the CSED notes that in Syllabus point 2 of *Goff v. Goff,* we held:

> The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments.

177 W.Va. 742, 356 S.E.2d 496 (1987). The CSED also argues that in West Virginia, child support payments vest as they accrue. Citing *Carter v. Carter,* 198 W.Va. 171, 175, 479 S.E.2d 681, 685 (1996). *See also* W. Va.Code § 48A–5–2(a) (1997) (Supp.1997) ("The total of any matured, unpaid installments of child support required to be paid by an order entered or modified by a court of competent jurisdiction, or by the order of a magistrate court of this state under the prior enactments of this code, shall stand, by operation of law, as a decretal judgment against the obligor owing such support.... A child support order shall not be retroactively modified so as to cancel or alter accrued installments of support."); *Goff v. Goff* at 747, 356 S.E.2d at 501 ("In the case of alimony or child support installments, the judgments mature on the dates the payments are due, and no ancillary proceedings are necessary to reduce the amount of those judgments to a sum certain." (citations omitted)). The CSED notes further that "[a] decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree." Syl. pt. 2, *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420 (1986).

Considering the above principles, the CSED argues that "[i]f a circuit court lacks the authority to retroactively modify a child support obligation, and the parties cannot by agreement terminate a child support obligation, *a fortiori,* the accrued and unpaid child support payments (which are the vested right of the judgment holder) may not be eliminated upon the [marriage or] remarriage of the parties."

The CSED continues by arguing that, because it is well established in West Virginia law that marriage does not alter a person's ownership of his/her own property, W. Va. Code § 48–2–1(f)(1992) (Repl.Vol.1996), and because a property settlement resulting from a divorce does not change upon the subsequent remarriage of the parties, Syl. pt. 2, *Caldwell v. Caldwell,* 177 W.Va. 61, 350 S.E.2d 688 (1986), then, the CSED contends, child support arrearages which have vested in the person to whom the funds are due should similarly remain unaltered upon subsequent remarriage or cohabitation of the parties.

The CSED also asserts that "[i]f an obligor fails to make ordered support payments, and the obligee or some public agency assumes that additional burden, the party who assumed that burden is entitled to recoup the payment from the obligated party." [16] *Citing Costello v. McDonald,* 196 W.Va. 450, 473 S.E.2d 736 (1996). Thus, the CSED argues, the parties' remarriage does not automatically terminate the rights of the State as the assignee of the support judgment. Finally,

---

16. *See* W. Va.Code § 9–3–4 (1979) (Repl.Vol. 1998) ("Any recipient of financial assistance under the program of state and federal assistance established by title IV of the federal Social Security Act of 1965, as amended, or any successor act thereto, shall, upon receipt of such assistance be deemed to have assigned to the West Virginia department of welfare all rights, title and interest such recipient may have to the receipt of support and maintenance moneys from any person responsible for the support and maintenance of any member of the benefit group.").

the CSED maintains that it is sound public policy to hold that a valid judgment in the form of accrued child support remains enforceable even after the subsequent marriage, remarriage or cohabitation of the parties.

At the outset, we note our holding in Section III. *A* of this opinion, that a preexisting order for child support remains in full effect when parents merely cohabit, resolves the present issue as it relates to cohabitation. Since cohabitation does not terminate an existing child support order, it certainly would not nullify child support arrearages accumulated under a fully enforceable order. Therefore, we limit our discussion in this section to the effect the marriage or remarriage of parents has on child support payments that accrued prior to such marriage or remarriage. Before we conclusively resolve this issue, we first review how other jurisdictions have addressed this matter.

In *Scheibel v. Scheibel,* the Supreme Court of Nebraska was asked "whether the subsequent remarriage of parties operates as a matter of law, independent of any other circumstances, to automatically bar any action for child support not paid between the time of [a] first decree of divorce and [a] subsequent remarriage." 204 Neb. 653, 654, 284 N.W.2d 572, 573 (1979). The court answered this question in the negative. Furthermore, in response to the noncustodial parent's assertion that the claim for child support arrearages was barred by latches, the court explained that the mere passage of time was insufficient, without an additional showing of prejudice, to support a claim of latches. *Id.* Finally, the court held:

> In the absence of any evidence whatever that the appellant was materially prejudiced by the delay in the assertion of the claim for support, we decline to hold that the remarriage of the parties will operate as a matter of law to prohibit the party for whose benefit the support was ordered from instituting action to collect the arrearages.

Syllabus, *Id.*

The Supreme Court of Iowa has reached a similar result. The case before the Iowa court involved a mother's pursuit of child support arrearages where the parents divorced, the husband became delinquent on his related child support obligation, and then the parents remarried. *Greene v. Iowa Dist. Court for Polk County,* 312 N.W.2d 915 (Iowa 1981). The arrearages the mother sought to recover were incurred between the divorce and subsequent remarriage. The court observed that the California Supreme Court, when faced with a similar question, found that the remarriage of parents "nullifies the [divorce] decree and terminates the jurisdiction of the court to enforce an order of child support." *Id.* at 917 (citing *Davis v. Davis,* 68 Cal.2d 290, 290, 66 Cal.Rptr. 14, 15, 437 P.2d 502, 503 (1968)). Nevertheless, the *Greene* court declined to follow its interpretation of the rule established by the California court, and, after reviewing other cases similarly declining to apply the California rule, the *Greene* court explained, "an award of child support is to provide the custodial parent with a money judgment. Each installment becomes a judgment when due.... Accrued installments thus become the vested right of the spouse entitled to the support and may not be taken away." *Greene* at 918. The *Greene* court concluded that the pre-remarriage child support judgment was enforceable as to unpaid arrearages.

The *Greene* case involved an added element. The arrearages were not due to the mother, as she had assigned her right to the support payments to the Iowa Department of Social Services in exchange for welfare benefits. Thus, the Iowa Department of Social Services ultimately received the benefit of the enforcement of the child support judgment. While this case demonstrates that when the right to accrued child support installments has been assigned to the state, the right is still enforceable, the court did not limit its holding to the particular scenario before it. Rather, the *Greene* court recognized generally that pre-remarriage child support judgments are enforceable as to unpaid arrearages.[17]

---

17. *Accord In re Marriage of Root,* 774 S.W.2d 521, 525–26 (Mo.Ct.App.1989) (recognizing that

*Greene* involved the additional element of "the assignment to the state agency by the mother of

We are inclined to agree with the reasoning and result contained in *Greene;* however, we disagree with that court's interpretation of *Davis v. Davis.* The court in *Greene* indicated that the California rule adopted in *Davis* differed from the rule being adopted in Iowa. On the contrary, we find that the *Davis* opinion supports the conclusion reached by the Iowa court. In *Davis,* the wife sought to collect child support payments for the period "between the separation that followed the remarriage, and the second support order," based upon the support order entered in connection with the parties' first divorce. *Davis* at 291, 66 Cal.Rptr. at 15, 437 P.2d at 503. In other words, she sought to rely on a pre-remarriage child support order to collect child support that she claimed accrued *after* the parties remarried. The *Davis* court held that "the remarriage [to each other of divorced parents] terminated the support provisions with respect to payments *thereafter accruing." Id.* at 290, 66 Cal.Rptr. at 14, 437 P.2d at 502 (emphasis added). By using the limiting language "thereafter accruing" in this holding, we believe the *Davis* court implied that child support payments accruing prior to the remarriage would be enforceable.[18]

In the case of *In re Marriage of Root,* 774 S.W.2d 521 (Mo.App.1989), the Missouri Court of Appeals analyzed this issue rather thoroughly. The *Root* court discussed several cases that apparently had reached the conclusion that accrued, yet unpaid, child support installments were not enforceable after the remarriage of the parties. However, the court explained that those cases were factually distinguishable. Two of those cases

involved attempts to collect child support allegedly accruing after the remarriage of the parties when, as explained in Section III. A of this opinion, the prior child support order was no longer enforceable.[19] Another involved a couple that filed for divorce but reconciled before the divorce was final. In that case the wife attempted to enforce a child support order to collect support for a period of time after the parties reconciled.[20] In all of these cases, the parties attempted to collect child support for a period of time when the parties were married, as opposed to a period prior to remarriage when the child support order would have been enforceable. However, the *Root* court recognized that at least one court had actually reached the conclusion that accrued but unpaid child support installments were not enforceable after the remarriage of the parties.[21] Nonetheless, the *Root* court concluded that the better rule recognized "remarriage does not bar the mother from collecting child support arrearages that accrued between the divorce and the remarriage." *Root* at 527.

Likewise, the Court of Civil Appeals of Alabama addressed this issue in *Hardy v. Hardy,* 600 So.2d 1013 (Ala.Civ.App.1992). The court acknowledged that "[n]either party contends that the court-ordered child support obligation was due after their subsequent remarriage. We are only concerned with the period of time from the original divorce decree ... to the date of the remarriage." *Id.* at 1014. In reaching the conclusion that a child support order was enforceable as to arrearages that accrued prior to the remarriage of the parents, the court explained:

---

her right to child support under the dissolution decree," and determining that "[t]he holding in *Greene* ... did not rest on the narrow ground that the agency's rights under the mother's assignment could not be impaired by her subsequent remarriage to the father.... *Greene* squarely held that the parties' remarriage did not nullify the claim for accrued installments of child support.").

18. *Accord Root* at 523 (recognizing that *Davis v. Davis,* 68 Cal.2d 290, 66 Cal.Rptr. 14, 437 P.2d 502 (1968), involved the attempted collection of post-remarriage child support).

19. *See Davis v. Davis,* 68 Cal.2d 290, 66 Cal.Rptr. 14, 437 P.2d 502 (attempt to collect post-remarriage child support); *Thomas v. Thomas,* 565

P.2d 722 (Okla.Ct.App.1976) (attempt to collect child support for period of time after common law remarriage).

20. *Rasch v. Rasch,* 250 Miss. 885, 168 So.2d 738 (1964).

21. Citing *Ringstrom v. Ringstrom,* 101 Ill.App.3d 677, 57 Ill.Dec. 193, 428 N.E.2d 743 (1981). *See also Palacci v. Palacci,* 613 A.2d 951 (Me.1992) (concluding that child support order entered in previous divorce becomes unenforceable upon the parents' remarriage and that arrearages are rendered uncollectible).

Court-ordered child support payments become final money judgments on the dates that they are due and are thereafter immune from change or modification.... Past-due installments of child support are final judgments which may be collected as any other judgment.... A trial court may not modify, release, or discharge the obligor of past-due child support once the obligation matures and becomes final under the original divorce decree.

*Id.* at 1015 (citations omitted).

 We find the aforementioned authorities particularly persuasive. Furthermore, we believe the law presently existing in this state directs us to concur with that authority. As the CSED correctly observed, the circuit courts of this state lack authority to modify or cancel accrued child support installments, Syl. pt. 2, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987), child support payments vest as they accrue, *Carter v. Carter,* 198 W.Va. 171, 175, 479 S.E.2d 681, 685 (1996), and child support judgments may not be "modified, suspended or terminated by an agreement between the parties to the divorce." Syl. pt. 2, *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420 (1986). For these reasons, we hold that when a valid court order requires payment of child support by one parent to another, and the parent who is required to make such payments has failed to make any or all of the required child support payments, the subsequent marriage or remarriage of the parents does not operate to nullify the arrearages that accumulated prior to such marriage or remarriage. Similarly, we hold that when a parent has assigned to the state child support arrearages that accumulated pursuant to a valid court order prior to the marriage of parents or remarriage of divorced parents, the subsequent marriage or remarriage of the parents does not inhibit the state's right to collect the child support arrearages.

## IV.

### CONCLUSION

For the reasons stated in this opinion, we conclude that the marriage or remarriage of parents automatically terminates a preexisting child support order; however, the mere cohabitation of the parents does not. We further conclude that child support arrearages that accumulated prior to the marriage or remarriage of the parents are not nullified as a result of such marriage or remarriage, and the right to collect such arrearages may be asserted, even where that right has been assigned to an agency of this State.

Certified questions answered.